Bettie Jane NEWHOUSE, Appellant,

v.

John MISTERLY, Sheriff, Appellee.

No. 22293.

United States Court of Appeals
Ninth Circuit.
Aug. 20, 1969.

S. Carter McMorris (argued), Sacramento, Cal., for appellant.

Nelson P. Kempsky (argued), Deputy Atty. Gen., Thomas C. Lynch, Atty. Gen., Doris H. Maier, Asst. Atty. Gen., Sacramento, Cal., for appellee.

Before MERRILL, DUNIWAY and HUFSTEDLER, Circuit Judges.

DUNIWAY, Circuit Judge:

Habeas corpus. The petition was denied and Newhouse appeals. On Janu-

ary 5, 1966, in the Municipal Court of Sacramento County, California, a jury found Newhouse guilty of a violation of Cal. Veh. Code § 23102 (drunk driving). This conviction was affirmed on an appeal to the Appellate Department of the Sacramento County Superior Court. In such a case California provides for further appellate review by an application for certification of the appeal to the California Court of Appeal. See Rule 63, Cal. Rules of Court. Newhouse did not make such an application but sought habeas corpus relief in the California Court of Appeal, which was denied without opinion. A similar petition to the California Supreme Court met the same fate.

Newhouse then filed the present petition, in which she raised the following grounds of attack on her conviction: (1) Her arrest and an accompanying search for evidence was without probable cause; (2) Her constitutional rights to be free of self-incrimination and unreasonable search and seizure, and to be afforded due process and a fair trial were abrogated by (a) failure of state officers to inform her of her right to refuse to take self-incriminating tests, (b) failure of the officers to advise her that she had a duty to submit to a test for intoxication, and (c) admission into evidence of the results of certain tests and her refusal to take others. The district court denied the petition, ruling that Newhouse had deliberately bypassed state appellate procedures and thus could not raise her claims, and alternatively, that she was not entitled to relief on the merits of her contentions.

Although the deliberate bypass doctrine does not bar relief here, we affirm the district court's dismissal of the petition on the merits.

#### I. *Deliberate Bypass.*

■ The finding of a deliberate bypass is based upon petitioner's failure to seek certification of her case from the Appellate Department of the Sacramento County Superior Court to the California Court of Appeal pursuant to Rule 63, Cal. Rules of Court. Newhouse's counsel, who has represented her throughout the various proceedings in this case, strenuously contests any finding of "an intentional relinquishment or abandonment of a known right or privilege" (Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461), and asserts that his failure to seek certification was the result of inadvertence and did not reflect a tactical or strategic decision.

The district court did not accept counsel's inadvertence excuse, because "[b]y his own admission counsel for petitioner is an experienced craftsman at all levels of the California courts and also in the federal courts, including the United States Supreme Court." Nonetheless, counsel's experience with cases procedurally similar to this one appears to have been acquired at a time when California did not allow certification of cases from the Superior Court's Appellate Department. Further, there is no showing of strategic or tactical benefit from counsel's choice of post-trial remedies, or that counsel in any way considered certification as an appropriate way of getting his case before the next higher court. Indeed, counsel's actions are consistent with a desire to obtain rapid review in the higher California courts and are in direct contradiction to the State's argument that failure to seek certification waived rights to review. Accordingly, no knowing waiver or deliberate bypass of post-trial remedies has been shown, and Newhouse is not barred from raising her constitutional claims here. Fay v. Noia, 1963, 372 U.S. 391, 438–440, 83 S.Ct. 822, 9 L.Ed.2d 837.

#### II. *Arrest*

Newhouse asserts that her arrest and an accompanying search for evidence were without probable cause. The evidence questioned apparently consists of sobriety test results.

■ The material before us indicates that Newhouse was driving a damaged auto on a Sacramento street in an erratic manner. The car was weaving back

and forth across its traffic lane, its right-front headlight was shining off the road to the right, and its right-front fender was pushed in and noisily rubbing against the tire. Stopping the car under these circumstances was certainly proper. At the very least the driver was violating the lighting equipment requirements of Cal. Veh. Code § 24252. Such a violation constituted a misdemeanor at the time of the "stop" and now would be a "violation." See Cal. Veh. Code § 40000.

After Newhouse had been stopped, she was asked to produce her driver's license. She fumbled about for a number of minutes and finally produced some identification other than the license. She was then asked to perform the "Field Sobriety Examination" at the roadside. She could not perform the first task of standing on one foot. The police then took her to their squad car and advised her of her right not to make any statements and to consult with an attorney before answering any questions.

The investigation which followed the stop was appropriate. The car's weaving suggested that its driver was intoxicated, and the fender's contact with the tire indicated that an accident may have occurred recently. The products of the investigation provided ample probable cause for an arrest.

The procedure used by the police is fully consistent with that approved in many recent cases in this circuit. United States v. Fallis, 9 Cir., 1969, 414 F.2d 772; Wartson v. United States, 9 Cir., 1968, 400 F.2d 25, 28; Arnold v. United States, 9 Cir., 1967, 382 F.2d 4, 7; Gilbert v. United States, 9 Cir., 1966, 366 F.2d 923, 928; Wilson v. Porter, 9 Cir., 1966, 361 F.2d 412.

### III. *The Sobriety Tests.*

After the arrest, Newhouse was taken to a hospital where she was examined by a doctor. She was asked to perform several physical tasks for the physician, but failed to do so. The physician then told her:

"I have come to the conclusion that you under the influence of alcohol and that you are drunk. Now, your only chance to prove that you are innocent, that is, officers are wrong and I am wrong, is for you to submit yourself to blood alcohol; and if it is normal, then we are wrong, and you are not under the influence of alcohol by law."

Newhouse indicated that she had given blood before, but refused to take the blood test.

At trial, the prosecution introduced in evidence the refusal to take the blood test. And, in closing argument, the prosecutor argued that the refusal showed that Newhouse was conscious of the fact that the test would be harmful. The trial judge instructed the jury that the refusal could be considered by them in deciding the question of guilt or innocence, that it was for the jury to give it such significance and weight as they thought it deserved.

At the time of Newhouse's arrest, California law required her to take the blood test. See People v. Duroncelay, 1957, 48 Cal.2d 766, 312 P.2d 690; People v. Conterno, 170 Cal.App.2d Supp. 817, 339 P.2d 968. The contention that this test required her to incriminate herself in violation of the Fifth Amendment is foreclosed by Schmerber v. California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. She was required to take the test and had no right to be informed to the contrary.

Nonetheless, Newhouse objects to the introduction in evidence of her refusal to take the test and to the subsequent prosecutorial comment and court instruction on the refusal. She relies on Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, and Schmerber v. California, *supra*, 384 U.S. at 765 n. 9, 86 S.Ct. 1826. But as *Schmerber's* note 9 indicates, *Griffin* is not applicable. The issue is not equivalent to comment on a refusal to testify at trial; rather, general Fifth Amendment principles apply.

518

The first portion of the *Schmerber* footnote discusses an accused who incriminates himself "when told that he would have to be tested." (384 U.S. at 765 n. 9, 86 S.Ct. at 1833.) It indicates that: "If it wishes to compel persons to submit to such attempts to discover evidence, the State may have to forego the advantage of any *testimonial* products of administering the test—products which would fall within the privilege." *(Id.)* In context the Court seems here to be talking of an incriminating statement by the accused which is induced by the requirement that the test be taken. See United States v. Wade, 1967, 388 U.S. 218, 222, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

The second portion of footnote 9 muddies up the waters somewhat. It discusses a "similar issue," i.e., the consequences of refusing to take the test. The Court there refers to a footnote in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which states in relevant part:

"[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (384 U.S. at 468 n. 37, 86 S.Ct. at 1625.)

Read together, to us the two portions of the *Schmerber* footnote indicate that a refusal to take a blood test is not a testimonial "statement" within the Fifth Amendment; rather, it is best described as conduct indicating a consciousness of guilt. See People v. Ellis, 1966, 65 Cal. 2d 529, 55 Cal.Rptr. 385, 389–390, 421 P.2d 393. Nonetheless, the reference to the *Miranda* footnote can be read to imply that where an underlying right to refuse such a blood test is present, it would be improper to draw adverse inferences from failure of the accused to respond to a request for a blood test because the accused would thereby be penalized for exercising his rights to refuse the test.

In the present case, Newhouse did not make any testimonial statement when confronted with the blood test requirement. And, because California gave Newhouse no constitutional or statutory right to refuse to take the test, the second portion of the *Schmerber* footnote does not apply. See People v. Sudduth, 1966, 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401; City of Westerville v. Cunningham, 1968, 15 Ohio St.2d 121, 239 N.E.2d 40; State v. Cary, 1967, 49 N.J. 343, 230 A.2d 384.

■ Newhouse makes one further claim: that the police failed to advise her that she had a duty to submit to the sobriety test and that due process required that she be given such advice. She considers this right to be advised of duties as correlative to the right to be advised of one's rights.

An accused, taken into custody by the police, is under their direction and control and is expected to comply with constitutional directives. The directives could arise in a number of areas, and we decline to begin a process of compiling a catalog of circumstances where, although compliance with a directive is a duty of the prisoner, the police must first tell him so before the duty becomes operative. Compliance is the general rule, not the exception. It is, we think, enough to require that the prisoner be told in those cases where he has a right not to comply.

Situations may occur where a person in custody does not have fair notice of the limits of his rights, and becomes confused about whether he need comply with official directions. See, *e.g.,* People v. Ellis, *supra.* California has in effect required that where a driver exhibits confusion as to the scope of his rights, the officers should tell him of his duty to comply with directions or alternatively elaborate on their description of his rights. See Rust v. Department of Motor Vehicles, 1968, 267 Cal.App.2d 545, 73 Cal.Rptr. 366; Reirdon v. Director, Department of Motor Vehicles, 1968, 266 Cal.App.2d 808, 72 Cal.Rptr. 614. But

Newhouse does not assert that she was confused, and accordingly, we do not pass on the constitutional dimensions, if any, of these California cases.

Affirmed.