Commonwealth *v.* Robinson, Appellant.

Argued September 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J. absent).

*Carmen P. Belefonte,* with him *Garland D. Cherry,* and *Kassab, Cherry and Archbold,* for appellant.

*Stephen J. McEwen, Jr.,* District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *William R. Toal, Jr.,* First Assistant District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., June 21, 1974:

Appellant was convicted by a jury of assaulting a person making an arrest without a warrant,[1] assault and battery,[2] and operating a motor vehicle while under the influence of intoxicating liquor.[3] On this appeal he raises three issues. None warrants reversal of his convictions.

The facts surrounding the charges may be summarized as follows. Around 11:15 p.m. on the night of June 29, 1971, Officer Richard Nestor of the Radnor Township Police Department was making a routine patrol of the grounds of the Overbrook Country Club when he observed appellant in the parking lot, staggering, with his shirt out and his fly open.[4] The officer drove to the clubhouse where he tried to find someone who could drive appellant home. He was unsuccessful and had returned to his patrolling when a car driven

---

[1] Act of June 24, 1939, P.L. 872, §314, Act of May 21, 1943, P.L. 306, §1, 18 P.S. §4314 (now repealed).

[2] Act of June 24, 1939, P.L. 872, §708, 18 P.S. §4708 (now repealed).

[3] The Motor Vehicle Code, Act of April 29, 1959, P.L. 58, §1037, 75 P.S. §1037.

[4] It appears that Officer Nestor and appellant were acquainted with each other. Appellant was prior to and at the time of this incident a Commissioner of Radnor Township. Officer Nestor was one of seven police officers who represented the members of the force during a meeting with the Commissioners concerning salaries. Also, as part of his duties he carried official township mail to appellant's home.

by appellant passed him at a high rate of speed. The officer followed, stopped the car, and placed appellant under arrest for drunken driving. Another officer arrived at the scene, and appellant was transported to the police station. There he was asked to submit to a breathalyzer test (referred to in the transcript as the "Mobat Test")[5] but he refused. When Officer Nestor attempted to remove appellant's tie before placing him in a cell, appellant struck the officer.

## I

Appellant's first contention is that the trial judge erred in refusing defense counsel's request (made during recross-examination) that the Commonwealth be directed to produce a police report prepared by Officer Nestor so that counsel might use it in questioning the officer. The judge gave three reasons for his ruling: (1) that it had not been conclusively established that the report existed; (2) that the request should have been made earlier (even before trial); and (3) that the report would be of little use to counsel since recross-examination was limited to the matters touched on during redirect examination.

The first of these reasons is not sound. The officer's testimony was equivocal, if not evasive, regarding the existence of the report. Nor does it appear that the district attorney used "diligent good faith efforts" in determining whether the report was part of the police files. *See,* ABA Project on Standards for Criminal Justice, Discovery and Procedure Before Trial §2.4 (1970).

The second and third reasons may be considered together, as they overlap.

---

[5] *See* Watts, Some Observations of Police-Administered Tests for Intoxication, 45 N.C. L. Rev. 34, 77 n.134 & accompanying text (1966).

Pa.R.Crim.P. 310 states that "[i]n no event . . . shall [a] court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth." Appellant's counsel thus could not have obtained the report before trial as the trial judge suggested.

There is no bar, however, to requesting discovery of a witness's written statements during trial. *Commonwealth v. Kontos*, 442 Pa. 343, 276 A.2d 830 (1971). In fact, "relevant, pre-trial statements of witnesses in the possession of the Commonwealth must be made available to the accused, upon request, during the trial." *Commonwealth v. Morris*, 444 Pa. 364, 366, 281 A.2d 851 (1971). *See also Brady v. Maryland*, 373 U.S. 83 (1963). This rule extends to reports made by police officers who testify as witnesses. *Commonwealth v. Swierczewski*, 215 Pa. Superior Ct. 130, 257 A.2d 336 (1969). The request must be timely, and come preferably before cross-examination of the witness begins. *Commonwealth v. Kubacki*, 208 Pa. Superior Ct. 523, 224 A. 2d 80 (1966). Upon timely request the trial judge should review the evidence and permit access to those portions that are relevant to matters raised on direct examination. *Commonwealth v. Swierczewski, supra* at 135, 257 A.2d at 339.

The report in question here was one of three. The defense had access to two of the reports prepared by the officer. The possibility that there was a third report appeared during cross-examination, and also from the officer's testimony at a pretrial hearing. Appellant's counsel, however, did not request production of the third report until recross-examination, and it was within the trial judge's discretion to consider the request as made too late. Appellant's counsel could have requested production of the report before beginning cross-examination of the officer, and at the very latest should have requested it following the officer's answers

to questions on cross-examination concerning the existence of the report. *See Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970). The importance of timely requests for discovery should not be minimized. There is an inherent possibility that interruptions and continuances will result while the court determines if discoverable materials actually exist and then reviews them for relevancy. Finally, redirect examination was narrowly limited, and the request for the report on recross-examination had something of the appearance of afterthought.

## II.

Appellant's second contention is that the trial judge erred in permitting the impeachment of a witness called by appellant.

Bernard White, appellant's friend and a fellow attorney, went to the Radnor police station in the early morning hours (between 1:45 and 2:00 a.m.) to confer with appellant and arrange for his release. On direct examination Mr. White testified that when he met appellant, "there was no indication . . . that he was under the influence or had been even been [*sic*] drinking. He was quite clear in what he said to me. He seemed to be thinking very clearly as to what he should do or should not do. His face was not flushed. I detected no smell of alcohol. He stood erect." In rebuttal, the Commonwealth recalled to the stand Officer William M. Zimmerman, who testified that on the night of the incident, after learning the information on the arrest report, Mr. White had said, "Yes, I can see what kind of condition Mr. Robinson is in." Appellant's counsel objected to the introduction of this evidence and moved for a mistrial. The motion was denied. Counsel then recalled Mr. White, who denied making any statements indicat-

ing that he "believed there was any substance or merit of any kind to the charge of drunken driving."

"It was once held that in order to impeach the credibility of a witness by proof of statements contradictory to his trial testimony, it was first necessary to lay grounds for the admission of the impeaching testimony by calling the witness's attention to the contradictory statements and inquiring if he had made such." *Commonwealth v. Dennison*, 441 Pa. 334, 338, 272 A.2d 180, 181 (1971). The reasons for this requirement were "(1) to avoid unfair surprise to the adversary, (2) to save time, as an admission by the witness may make the extrinsic proof unnecessary, and (3) to give the witness, in fairness to him, a chance to explain the discrepancy." McCormick, Handbook on the Law of Evid. §37, at 72 (2d ed. 1972). "However, it has been established for some years in Pennsylvania that such procedure is not mandatory and is now a matter within the sound discretion of the trial judge, subject to reversal if the discretion is abused. *Commonwealth v. Powell*, 303 Pa. 104, 154 A. 287 (1931), and *Commonwealth v. Dilsworth*, 289 Pa. 498, 137 A. 683 (1927). See also, 2 Henry Pa. Evidence §803 (4th ed. 1953), and 3 Wigmore, Evidence §1028 (3d ed. 1940)." *Commonwealth v. Dennison, supra* at 338, 272 A.2d 181-82.

There was no abuse of discretion here. Appellant was permitted to recall Mr. White and question him about any statements he might have made while at the police station. Although appellant argues that he was prejudiced by having to recall Mr. White, it is not apparent how he was prejudiced in a way he would not have been had Mr. White been confronted with the statement on cross-examination. Moreover, as the trial judge notes in his opinion, appellant's counsel "used the same technique in attempting to impeach the credibility of the Commonwealth's witnesses."

## III.

Appellant's third contention concerns the admissibility of evidence that he refused to take a breathalyzer test. This contention presents issues both difficult and important.

As has been stated, following his arrest and while he was confined at the police station, appellant was asked, but refused, to take a breathalyzer test. Before trial, appellant filed a motion to suppress evidence of this refusal, stating as one ground that such evidence was obtained in violation of his privilege against self-incrimination. The motion was denied.

At trial, Officer Nestor testified that he asked appellant to take a breathalyzer test and explained that it could be administered by a person of appellant's choice, but appellant refused. The officer then began to testify concerning how the test is administered, how the apparatus works, and the significance of the test results. At this point the trial judge interrupted and addressed the jury: "Let me tell you quite strongly at this point that the refusal to take the test is no evidence of guilt or innocence in this case. Please remember that . . . . It is here for a limited purpose which I shall explain to you later." The officer then completed his explanation. Appellant took the stand and testified that he refused to take the breathalyzer test because he knew that such tests could be fixed and feared that the data from any test he took would not find its way to the laboratory but would be replaced by data from some other source that would indicate intoxication. On cross-examination, appellant admitted that as an attorney he was familiar with the evidentiary concept of "chain of custody,"[6] but stated that the

---

[6] *See* McCormick, *supra*, §212, at 527-28.

police officers who would have handled his test results would have perjured themselves to establish the chain.

In his charge to the jury, the trial judge stated: "You have had frequent reference in this case to a Mobat test, and I charged you during the course of the trial that the refusal to take the test, and it was testified to both from the Commonwealth side and the Defendant's side, and the explanations were given in connection with that action, but I told you then, and I will tell you now, that the refusal to take the test has nothing to do with the guilt or innocence of this Defendant.

"I permitted it solely so that you might know why there was no scientific evidence in the case and only for that limited purpose."

Appellant argues that "the utilization of [his] refusal to take the Mobat test by the prosecution was in effect commenting on the assertion by [him] of his privilege not to incriminate himself prior to trial." Such comment, he contends, is forbidden as a logical protection of the right guaranteed by the Fifth Amendment (made applicable to the states by *Malloy v. Hogan,* 378 U.S. 1 (1964)) that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."[7] *See Miranda v. Arizona,* 384 U.S. 436, 468 n.37 (1966) (comment on silence while in custody); *Griffin v. California,* 380 U.S. 609 (1965) (comment on silence at trial). Appellant maintains this error was not cured by the trial judge's attempt to restrict the jury's use of the evidence of his refusal:

"It is apparent that the use of the Defendant's pretrial assertion of his rights went far beyond the effect

---

[7] Article I, §9, of the Pennsylvania Constitution provides that an accused "cannot be compelled to give evidence against himself . . . ." It appears that so far as concerns the question here this provision has in the past been given the same interpretation as the Fifth Amendment. *See, e.g.,* Commonwealth v. Musto, 348 Pa. 300, 35 A.2d 307 (1944).

intended by the Court in allowing said testimony into evidence.

"Significantly, when the Commonwealth was presenting this evidence, it also introduced into evidence the conclusiveness of the results of the Mobat test. Moreover, the Defendant was cross-examined as to his knowledge of the conclusiveness of said Mobat test.

"While the Court charged the jury that this evidence was introduced only to show why scientific evidence was not used, it is submitted that the District Attorney did not introduce it for that reason. Moreover, it would be naive to assume the jury considered said evidence in that light." [References to record omitted.]

Finally, appellant argues: "It cannot be argued that the Defendant's judicial admission that he refused to take the Mobat test purged this error in any respect. See, Harrison vs. United States, 392 U.S. 219 (1968). The Court's decision to allow the Commonwealth to use this evidence, while erroneous, compelled the Defendant to testify as to the reason for his refusal to take the Mobat test. Hence, his testimony was tainted by the same illegality rendering said evidence inadmissible."

In response to these arguments the Commonwealth points to the "implied consent law." The Vehicle Code, *supra*, §624.1 added Act of July 28, 1961, P.L. 918, §1, as amended Act of July 31, 1968, P.L. 758, No. 237, §1, Act of Dec. 22, 1969, P.L. 392, §1, 75 P.S. §624.1(d), which permits a police officer to ask a driver "to submit to a chemical test" of his breath where the officer has "reasonable grounds to believe the person to have been driving while under the influence of intoxicating liquor." If the driver refuses to take the test, it will not be given, but "[t]he refusal . . . may be admitted into evidence as a factor to be considered in determining innocence or guilt." *Id.* §1(h), 75 P.S. §624.1(h).

The correctness of appellant's second and third arguments may be conceded. It does seem likely that the jury held appellant's refusal to take the breathalyzer test against him, and if it was error to admit evidence of his refusal, the error was not cured either by the trial judge's instruction to the jury or by appellant taking the stand. It is therefore necessary to decide whether subsection (h) of the implied consent law offends the Fifth Amendment.[8]

In *Schmerber v. California,* 384 U.S. 757 (1966), the Court held that requiring a person to submit to a blood test and then admitting in evidence an analysis of the blood did not violate the defendant's Fifth Amendment privilege against self-incrimination. The Court acknowledged "that in requiring [Schmerber] to submit to the withdrawal and chemical analysis of his blood the State compelled him to submit to an attempt to discover evidence that might be used to prosecute him for a criminal offense." *Id.* at 761. "The critical question, then [was] whether [Schmerber] was thus compelled 'to be a witness against himself.' " *Id.* Relying largely on *Holt v. United States,* 218 U.S. 245 (1910), which held that it was not a violation of the Fifth Amendment to require a defendant to model a blouse, the Court concluded:

"It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 U.S. 616. On the other hand, both federal and state courts have usually held that it offers no

---

[8] During oral argument the district attorney stated that he believed subsection (h) to be unconstitutional, and he asked the court to reach the issue so that the matter may be definitively decided.

protection against compulsion to submit to finger-
printing, photographing, or measurements, to write
or speak for identification, to appear in court, to stand,
to assume a stance, to walk, or to make a particular
gesture. The distinction which has emerged, often ex-
pressed in different ways, is that the privilege is a
bar against compelling "communications" or "testi-
mony," but that compulsion which makes a suspect or
accused the source of 'real or physical evidence' does
not violate it." *Id.* at 763-64.[9]

Applying this analysis to the facts before it, the
Court found that "[n]ot even a shadow of testimonial
compulsion upon or enforced communication by the
accused was involved either in the extraction or in the
chemical analysis. Petitioner's testimonial capacities
were in no way implicated; indeed, his participation,
except as a donor, was irrelevant to the results of the
test, which depend on chemical analysis and on that
alone.[9] Since the blood test evidence, although an
**incriminating product of compulsion, was neither peti-**
**tioner's testimony nor evidence** relating to some com-
municative act or writing by the petitioner, it was not
inadmissible on privilege grounds." *Id.* at 765.

The footnote to this statement is critical. In the
footnote, the Court said: "[9] This conclusion [that
Schmerber's 'testimonial capacities were in no way
implicated'] would not necessarily govern had the State
tried to show that the accused had incriminated him-
self when told that he would have to be tested. Such
incriminating evidence may be an unavoidable by-
product of the compulsion to take the test, especially
for an individual who fears the extraction or opposes
it on religious grounds. If it wishes to compel persons

---

[9] The Court recently reaffirmed this distinction in holding that
the compelled production of voice exemplars did not constitute self-
incrimination. *United States v. Dionisio,* 410 U.S. 1 (1973).

to submit to such attempts to discover evidence, the State may have to forego the advantage of any *testimonial* products of administering the test—products which would fall within the privilege. Indeed, there may be circumstances in which the pain, danger, or severity of the operation would almost inevitably cause a person to prefer confession to undergoing the 'search,' and nothing we say today should be taken as establishing the permissibility of compulsion in that case . . . .

"Petitioner has raised a similar issue in this case, in connection with a police request that he submit to a 'breathalyzer' test of air expelled from his lungs for alcohol content. He refused the request, and evidence of his refusal was admitted in evidence without objection. He argues that the introduction of this evidence and a comment by the prosecutor in closing argument upon his refusal is ground for reversal under Griffin v. State of California, 380 U.S. 609. We think general Fifth Amendment principles, rather than the particular holding of Griffin, would be applicable in these circumstances, see Miranda v. Arizona, 384 U.S. at p. 468, n.37 . . . . [W]e think petitioner's contention is foreclosed by his failure to object on this ground to the prosecutor's question and statements." *Id.* at 765.

The footnote in the *Miranda* opinion to which reference is made states in part:

"Lord Devlin has commented: 'It is probable that even today, when there is much less ignorance about these matters than formerly, there is still a general belief that you must answer all questions put to you by a policeman, or at least that it will be the worse for you if you do not.' Devlin, The Criminal Prosecution in England 32 (1958).

'In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use

at trial the fact that he stood mute or claimed his privilege in the face of accusation.' Cf. Griffin v. California, 380 U.S. 609 . . . ." [Citations omitted.]

It is evident from *Schmerber* that compelling a person to submit to a breathalyzer test does not violate the Fifth Amendment. Breathing into an apparatus involves no communication. Indeed, the person's testimonial capacities are not involved at all; he is merely the source of "physical evidence." It is equally evident, however, that *Schmerber* did not decide but left open the question presented here, *i.e.*, whether admission into evidence of the person's refusal to submit to such test violates the Fifth Amendment.

This question is not answered by *Griffin v. California, supra,* and *Miranda v. Arizona, supra,* and appellant's reliance on those cases is misplaced. Whether a prosecutor may comment on a defendant's refusal to testify at trial, and whether he may comment on a defendant's refusal to take a breathalyzer test, are not "equivalent" issues. *Newhouse v. Misterly,* 415 F.2d 514 (9th Cir. 1969), *cert. denied,* 397 U.S. 966 (1970). A defendant has a right, protected by the Fifth Amendment, not to testify; he has no such right not to take a breathalyzer test. Cases intended to protect a defendant when he exercises a Fifth Amendment right, such as *Griffin* and *Miranda,* cannot be invoked to protect a defendant when he does something not protected by the Fifth Amendment. *People v. Sudduth,* 65 Cal. 2d 543, 55 Cal. Rptr. 393, 421 P.2d 401 (1966), *cert. denied,* 389 U.S. 850 (1967); *People v. Ellis,* 65 Cal. 2d 529, 536, 55 Cal. Rptr. 385, 389, 421 P.2d 393, 397 (1966). *See also City of Westerville v. Cunningham,* 15 Ohio St. 2d 121, 44 Ohio Ops. 2d 119, 239 N.E.2d 40 (1968). That is why footnote nine of *Schmerber* states that the reasoning of *Griffin* and *Miranda* should not be relied on here but that we should instead apply "general Fifth Amendment principles." Thus we must determine

whether a refusal to submit to a breathalyzer test is of a "testimonial or communicative nature." *Schmerber v. California, supra* at 761. If it is, the refusal may not be admitted in evidence against a defendant, and subsection (h) of the implied consent law, 75 P.S. §624.1(h), is unconstitutional.

There is some basis for arguing that a refusal is of a testimonial nature. Although a refusal may be by silence, generally it will consist either of words or of acts that are the equivalent of words. The mere fact that a refusal may be verbal, however, does not make it testimonial.

In *United States v. Wade,* 388 U.S. 218 (1967), it was held that persons in lineups could be required to speak words allegedly uttered by the person being sought; and in *United States v. Dionisio, supra,* it was held, relying in part on *Wade,* that the compelled production of voice exemplars did not violate the Fifth Amendment. The rationale of these holdings is that in both instances a person is "required to use his voice as an identifying physical characteristic, not to speak his guilt." *United States v. Wade, supra* at 222. The listener's focus is on the act of speaking (so as to determine the physical properties of the voice) and not on the content of the words spoken. (This is true even when a person is asked to parrot the words spoken by the culprit being sought.) It will be observed that this rationale does not extend to compulsion that requires the defendant to do more than parrot words, but is directed to making him produce speech the content of which when attributed to him has significance on the issue of his guilt or innocence greater than that attached to his mere act of speaking.

Whether a refusal falls within the rationale of *Wade* and *Dionisio* will depend on the nature of the refusal. Take for example the case where a request that a driver submit to testing produces the simple statement, "I

refuse." The driver's words have no greater significance than a silent negative shake of his head would have had. As in *Wade* and *Dionisio,* his particular choice of words ("I refuse," or "I won't," or "No, I don't think I will," or another comparable phrase) is not important. It is his act of refusing, as made clear by his words, that is pertinent. The driver's statement indicates that he is refusing; his words simply identify this action and are no more suggestive of guilt than his action is. Thus the act of refusing may be equated with the act of speaking that can be compelled under *Wade* and *Dionisio.*

In *People v. Ellis, supra,* the Supreme Court of California faced a question similar to that facing us: whether a defendant's refusal to participate in a voice identification test constituted a "testimonial communication." The court, per Traynor, C.J., in concluding that it did not, viewed the defendant's refusal as an act:

"[D]efendant's refusal to 'display his voice' . . . . was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody, . . . flight, [and] suppression of evidence, . . . its admission does not violate the privilege. Moreover, as in the foregoing examples, the evidence did not result from a situation contrived to produce conduct indicative of guilt. Unlike the superstitious tests described by Wigmore and their modern successor, the lie detector, that have as their sole purpose the establishment of an environment in which the accused's consciousness of guilt can be detected, the purpose of asking defendant to speak was to obtain probative physical evidence and the conduct was merely incident to that effort. A guilty party may prefer not to find himself in a situation where consciousness of guilt may be inferred from his conduct, but it can scarcely be contended that the police, who seek evidence from the test itself, will tend

to coerce parties into refusing to take tests in order to produce this evidence.

"Although conduct indicating consciousness of guilt is often described as an "admission by conduct," such nomenclature should not obscure the fact that guilty conduct is not a testimonial statement of guilt. It is therefore not protected by the Fifth Amendment. By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind." [Citations and footnotes omitted.] *Id.* at 536-38, 55 Cal. Rptr. at 389-90, 421 P.2d at 397-98.

This analysis is equally applicable to a defendant's refusal to submit to a breathalyzer test. *See People v. Sudduth, supra* (applying the reasoning of *Ellis* to a refusal to submit to a breathalyzer test). In *City of Westerville v. Cunningham, supra* at 122, 44 Ohio Ops. 2d at 119-120, 239 N.E.2d at 41, the court said:

"Where a defendant is being accused of intoxication and is not intoxicated, the taking of a reasonably reliable chemical test for intoxication should establish that he is not intoxicated. On the other hand, if he is intoxicated, the taking of such a test will probably establish that he is intoxicated . . . . Thus, it is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt . . . ."

Admittedly, a person may refuse to take a test for reasons that have nothing whatever to do with his guilt or innocence. He may, for example, believe that the test is unreliable or against his religious scruples. These possibilities, however, affect the weight rather than the admissibility of evidence of refusal. The Commonwealth should discount the existence of such reasons for refusal if it wishes to make the most effective use of the evidence of refusal. Because a person may re-

fuse to submit to testing for reasons other than a fear that the results will indicate guilt, evidence of refusal is less reliable and substantial than evidence of the results produced by the test. Note, Constitutional Limitations on the Taking of Evidence, 78 Yale L.J. 1074, 1082-85 (1969). Although, as remarked in *Ellis*, it seems unlikely then that police officers will request persons to submit to testing in order to obtain a refusal, rather than to obtain the test results, a defendant is free to show in any case that his refusal resulted from "a situation contrived to produce conduct indicative of guilt." *People v. Ellis, supra* at 537, 55 Cal. Rptr. at 389, 421 P.2d at 397.

We therefore hold that the mere refusal to take a breathalyzer test is an act indicative of guilt that does not come within the purview of the Fifth Amendment. Accordingly, subsection (h) of the implied consent law, 75 P.S. §624.1(h), is constitutional, and evidence of refusal is admissible at trial.

It is important to note the limits of this holding. "[I]ncriminating statement[s] by the accused which [are] induced by the requirement that the test be taken" must be excluded. *Newhouse v. Misterly, supra* at 518. Moreover, footnote nine of *Schmerber* and its reference to the *Miranda* footnote suggests that statements indicating reasons for refusing to take the test are "testimonial communications." The very fact that evidence of a refusal is admissible may result in a person's feeling compelled by a request to give reasons for his refusal. Such compulsion is inconsistent with the *Miranda* warnings that he has a right to remain silent and that exercise of the right will prevent police from questioning him. Moreover, the rationale by which we concluded that a refusal to take the test was not within the purview of the Fifth Amendment, *i.e.,* a refusal is conduct that may be regarded as indicating

consciousness of guilt, does not extend to statements indicating reasons for the refusal.[10]

In the present case the Commonwealth introduced only evidence of appellant's mere refusal. It did not introduce evidence of any statements appellant made in explanation. For the reasons stated above, we hold that the introduction of the evidence of mere refusal did not abridge appellant's rights under the Fifth Amendment.

The judgments of sentence are affirmed.

WATKINS, P. J., and HOFFMAN and CERCONE, JJ., concur in this result.

WRIGHT, P. J., and SPAULDING, J., did not participate in the consideration or decision of this case.

---

[10] This is not to say that the Commonwealth may not show that after being given the *Miranda* warnings, a defendant waived his right to remain silent; nor does it prevent a defendant from introducing evidence of statements made at the time of refusal (as appellant did in this case).