549 A.2d 231

COMMONWEALTH of Pennsylvania

v.

Donald MONAHAN, Appellant.

Superior Court of Pennsylvania.

Argued June 9, 1988.

Oct. 26, 1988.

624

Thomas M. Dickey, Altoona, for appellant.

Keith A. Presto, Assistant District Attorney, Hollidaysburg, for Com., appellee.

Before CAVANAUGH, ROWLEY and KELLY, JJ.

KELLY, Judge:

In this case, we are called upon to determine whether an appellant's pre-arrest refusal to explain his appearance at a state police barracks with a dead body and the murder weapon in his automobile may be admitted into evidence, and whether appellant's post-arrest refusal to submit to a neutron activation test to determine whether he had recently fired a gun may be admitted into evidence. Despite appellant's objections on constitutional grounds, we find as to both of these issues that the evidence was admissible.

On March 23, 1982, at 1:40 a.m., appellant appeared at the Pennsylvania State Police Barracks at Hollidaysburg, Pennsylvania, and informed the desk officer on duty that he wanted to report a dead body. He further indicated to the trooper that the body was in the automobile parked in front of the barracks. Two other troopers went out to the automobile and discovered the body of the victim, a young woman, located in the passenger's side of the front seat. The victim had been killed by a single gun shot wound to the left side of the head. In addition, the murder weapon, a hand gun, was found in the automobile beside the victim. The weapon was later determined to have been stolen from its owner several years prior to the subject incident.

On the same day, a criminal complaint was filed, charging appellant with homicide, aggravated assault, recklessly endangering another person and receiving stolen property. Appellant was subsequently tried and convicted on all offenses; the homicide charge was determined by the jury to be first degree murder. A sentencing hearing was conducted on the first degree murder conviction, after which the jury returned a sentence of life imprisonment. Both post-trial motions and supplemental post-trial motions filed by new counsel were denied after a hearing. Appellant was sentenced to a term of life imprisonment on the first degree

murder conviction and to a consecutive period of one to five years imprisonment on the receiving stolen property conviction. This timely appeal follows.

On appeal, appellant raises twelve separate issues[1] in support of its contention that the trial court erred in failing to grant appellant's post-trial motion for a new trial. We have reviewed the voluminous record, the briefs of the parties, and the well-reasoned opinion of the Honorable Richard A. Behrens. In this opinion, we shall address only two of the issues raised by the appellant. First, we will consider appellant's contention that the trial court erred in admitting evidence of his pre-arrest silence. Second, we will consider appellant's contention that the trial court erred in admitting evidence of his post-arrest refusal to submit to a neutron activation test. These contentions present issues of general significance to the public which warrant further examination. With respect to the ten remaining issues, we affirm on the basis of the trial court opinion.

## I.

Appellant contends that the trial court erred in charging the jury that appellant's failure to give an explanation to the police at the state police barracks as to what had occurred could be considered by the jury to assess appellant's credibility. Testimony reveals that after appellant reported a dead body in his automobile parked outside the barracks, two police officers went out to investigate. At least one officer, Trooper William Emeigh, remained inside the barracks with appellant. Trooper Emeigh questioned appellant as to his name and address, which was obtained. However, when Trooper Emeigh asked appellant what had happened, appellant refused to answer.

The trial court charged the jury as follows:

... [Y]ou have heard evidence in this case concerning the failure of the defendant to give an explanation to the

1. Appellant originally raised fourteen issues on appeal but two of the issues were conceded to be without merit by the appellant in his brief on appeal.

police at the State Police barracks as to what had occurred and also evidence regarding asking for an attorney or asking to speak with his attorney. You are hereby directed that a defendant's silence and/or his request for an attorney or to speak to an attorney is not any evidence of guilt whatsoever and should not be considered as such. A defendant's silence prior to being advised of his constitutional rights and prior to being taken into custody, however, may be considered in connection with a jury's assessment of defendant's credibility as a witness in this case in conjunction with all the other factors bearing on credibility but only for the purpose of credibility and only if you are satisfied that under all the circumstances then and there existing an explanation would naturally have been given by the defendant.

(N.T. 11/5/82 at 571–572). Appellant contends that this charge is inconsistent with the law of this Commonwealth.

Appellant alleges that his silence during the circumstances related above was not pre-arrest silence but rather post-arrest silence. In either event, appellant contends that *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982), is dispositive of this issue. In *Turner*, our Supreme Court found as follows.

Silence at the *time of arrest* may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent. (Citations omitted). Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.

499 Pa. at 583, 454 A.2d at 539, 540. (Emphasis added). The court in *Turner* ruled that if a defendant remains silent after his arrest but prior to receiving *Miranda* [2] warnings, his silence cannot be used to impeach his trial testimony. In the instant case, however, the trial court determined that appellant's silence occurred at a pre-arrest stage.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■■ An arrest may be accomplished by any act that indicates an intent to take an individual into custody and subject him to the control and will of the person making the arrest. *Commonwealth v. Lovette,* 498 Pa. 830, 450 A.2d 975 (1982) *cert. denied* 459 U.S. 1178, 103 S.Ct. 803, 74 L.Ed.2d 1025 (1983). An arrest may be effectuated without the actual use of force and without a formal statement of arrest. *Commonwealth v. Daniels,* 455 Pa. 552, 317 A.2d 237 (1974); *Commonwealth v. Douglass,* 372 Pa.Super. 227, 539 A.2d 412 (1988).

> The test is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized.

372 Pa.Superior Ct. at 241, 539 A.2d at 419. (Citations omitted). Finally, whether an encounter is to be deemed 'custodial' must be determined with reference to the totality of the circumstances. *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987); *Commonwealth v. Lovette supra; Commonwealth v. Douglass, supra.*

■■■ After appellant reported the dead body and before the officers returned from checking appellant's car, appellant had not been arrested. The police had no corroborative information that there was a dead body in the car or any information that a murder might have occurred. Appellant had not suggested that he or anyone else had committed a crime. No physical or verbal restraints were placed upon appellant, nor had he yet been given his *Miranda* warnings. At that juncture, neither a formal arrest nor a custodial detention had occurred. Therefore, use of appellant's silence during that time period by the Commonwealth to impeach appellant's credibility as a witness [3] did not violate

---

3. At trial, appellant testified that he kept the gun in his car on top of the transmission hump partially under the seat. He stated further that he was in the car with the victim and as he was getting out of it, he heard a click; he turned and saw the victim holding the gun. As he reached over to grab the gun, it went off and the victim shot herself. (N.T. 11/5/82 at 487–488). Appellant's silence at the police station was used to raise an inference that appellant had made up this plausible scenario later in an attempt to escape justice, and that if the

appellant's Fifth Amendment right against self-incrimination. *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985). The charge given by the trial court correctly stated the applicable law.

## II.

Appellant next contends that the trial court erred by permitting the Commonwealth to introduce testimony of appellant's refusal to submit to a neutron activation test.[4] At trial, testimony presented by the Commonwealth indicated that the results of the neutron activation test on appellant were negative. (N.T. 11/3/82 at 249). Trooper Lingenfelter explained, however, that the test was only effective if administered within two hours of the discharge (N.T. 11/3/82 at 193), and that appellant had refused to submit to the test between 2:30 a.m. and 3:00 a.m., on the morning appellant had appeared at the barracks, thus the test was not administered until 4:00 a.m. after a search warrant was finally obtained to proceed with the test. (N.T. 11/3/82 at 211). In his testimony, Trooper Lingenfelter explained further that a subject could remove the minute particles of barium and antimony by rubbing his hands together, by washing his hands or by putting his hands in his pockets. (N.T. 11/3/82 at 193). The inference the Commonwealth sought from this evidence was that appellant exhibited a consciousness of guilt in resisting the test, that appellant feared the test might reveal his guilt.

shooting had really occurred as appellant testified, appellant would have had no reason to refuse to tell the police his version of the facts when he first reported the dead body to them.

4. The trial court explained that:
   [a] neutron activation test is a test performed on the hands of a subject to determine whether he has discharged a firearm. (N.T. at 192). The test consists of putting a prepared solution onto cotton swabs and then swabbing the subject's hands. The test is designed to detect minute quantities of antimony and barium. The presence of both of these elements on the subject's hands indicates that the subject has discharged a firearm. (N.T. at 192–193).
   (Trial Ct.Op. at 11, footnote).

Appellant advances two theories in support of his contention that the trial court erred by permitting introduction by the Commonwealth of testimony concerning appellant's refusal to submit to a neutron activation test. First, appellant argues that such testimony violated Pa.R.Crim.P. 305(B)(1)(b). Secondly, appellant argues that such testimony violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution.[5]

## A.

In support of his first theory, appellant alleges that because the pre-trial discovery statement received from the District Attorney's office listed the result of the neutron activation test as negative, the Commonwealth could not introduce his refusal to submit to the test into evidence. Appellant argues that introduction of this evidence by the Commonwealth constituted a violation of Pa.R.Crim.P. 305(B)(1)(b).[6] We do not agree.

**5.** Appellant has not raised, and hence, we do not address any Fourth Amendment implications of the procedures followed in this case. Because the police elected to wait for a warrant rather than to proceed with the minimally intrusive neutron activation test for highly evanescent evidence despite appellant's refusal to consent to the test, we have no occasion in this case to determine whether such deference to appellant's wishes was constitutionally required where both probable cause and extreme exigence related to the evanescent nature of the evidence to be recovered by the test existed.

**6.** Pa.R.Crim.P. 305(B)(1)(b) provides:
    B.  Disclosure by the Commonwealth
    (1) Mandatory.  In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.  The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
        *     *     *     *     *     *
    (b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth.
        *     *     *     *     *     *

The trial court accurately stated that appellant is complaining about the way the Commonwealth used the information it had disclosed to appellant and not the Commonwealth's failure to disclose the evidence itself. (Trial Ct.Op. at 13). We agree with the trial court that the Commonwealth properly disclosed the evidence as required, and that the Commonwealth's theory of the case was protected as work product under Pa.R.Crim.P. 305(G) and not subject to disclosure. Here, no violation of Pa.R.Crim.P. 305(B)(1)(b) occurred.

## B.

Appellant contends, alternatively, that his refusal was barred from introduction into evidence by the Fifth and Fourteenth Amendments of the United States Constitution. We cannot agree.

■ Initially, we note that the gathering of evidence by conducting a neutron activation test is analytically indistinguishable from the gathering of evidence through such tests and procedures as blood tests, breathalyzer tests, handwriting exemplars and fingerprints. In such instances, the items sought and/or refused are not testimonial in nature, and consequently fall within the ambit of the Fourth Amendment, not the Fifth Amendment.[7]

■ Though appellate courts of Pennsylvania have not previously dealt with this precise issue, we find that no error was committed in permitting admission of testimony regarding the appellant's refusal to submit to the neutron activation test. In *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the United States Supreme Court held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does

7. *See Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar); *Commonwealth v. Jefferson,* 445 Pa. 1, 281 A.2d 852 (1971) (fingerprint evidence); *Commonwealth v. Anderl,* 329 Pa.Super. 69, 477 A.2d 1356 (1984) (breathalyzer results); *Commonwealth v. Moyer,* 315 Pa.Super. 174, 461 A.2d 853 (1983) (fingerprint evidence); *Commonwealth v. Moss,* 233 Pa.Super. 541, 334 A.2d 777 (1975) (handwriting exemplar).

not offend the right against self-incrimination under the Fifth Amendment. The Court explained, "... that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." 459 U.S. at 564, 103 S.Ct. at 922–23. The Court, in a footnote to the above quotation, stated: "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.*" 459 U.S. at 564 n. 15, 103 S.Ct. at 922–23 n. 15.[8] Justice Traynor in *People v. Ellis,* 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393 (1966), held that a refusal to speak for voice identification was not a testimonial communication subject to the proscriptions of the Fifth Amendment. He likened evidence of such a refusal to that of flight, escape or intentional destruction of incriminating evidence, stating "by acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence of his state of mind." 421 P.2d at 397–98. We find Justice Traynor's observation apt and applicable to this case.

**8.** *See Commonwealth v. Dougherty,* 259 Pa.Super. 88, 393 A.2d 730 (1978) (admission into evidence of defendant's refusal to submit to breathalyzer test is not violative of defendant's privilege against self-incrimination); *Commonwealth v. Robinson,* 229 Pa.Super. 131, 324 A.2d 441 (1974) (admission into evidence of defendant's refusal to submit to breathalyzer test under implied consent law is not violative of defendant's Fifth Amendment privilege against self-incrimination); *Commonwealth v. Rutan,* 229 Pa.Super. 400, 323 A.2d 730 (1974) (same); *see also State v. Stever,* 107 N.J. 543, 527 A.2d 408 (1987) cert. denied — U.S. —, 108 S.Ct. 348, 98 L.Ed.2d 373 (1987) (admission into evidence of suspect's refusal to submit to breathalyzer test did not violate suspect's common law privilege against self-incrimination or suspect's due process rights under State Constitution); *State v. Bakst,* 30 Ohio App.3d 141, 506 N.E.2d 1208 (1986) (no constitutional right to refuse to take a blood-alcohol test: Fifth Amendment does not prohibit the admission of a defendant's refusal to take the chemical test or tests, or the admission of his silence when asked for the reason(s) for the refusal). For a detailed analysis of the United States Supreme Court's holding in *South Dakota v. Neville* see Crump, *Admission of Chemical Test Refusals after South Dakota v. Neville: Drunk Drivers Can't Take the Fifth,* 59 N.D.L.Rev. 349 (1983).

Appellant argues, however, that a refusal to submit to a neutron activation test is not the same as a refusal to submit to a breathalyzer test because the latter situation is governed by an "implied consent" law which permits the prosecution to introduce such refusal at trial by specific statute, and that no such "implied consent" applies to the refusal in the instant case. This contention is without merit.

Statements of refusal to submit to reasonable physical evidence tests are admissible because they are the product of neither coercion nor interrogation, not because they are themselves physical evidence or because statutes authorize their admission. As Justice Traynor stated in *People v. Ellis, supra,*

'A guilty party may prefer not to find himself in a situation where consciousness of guilt may be inferred from his conduct, but it can scarcely be contended that the police, who seek evidence from the test itself, will tend to coerce parties into refusing to take tests in order to produce this evidence.

421 P.2d at 397. If such a statement *were* the product of either coercion or interrogation, no statute could abbrogate the Fifth Amendment protections applicable to such communications. Succinctly, implied consent laws impact Fourth Amendment rather than Fifth Amendment privileges; pursuant to such statutes drivers consent to relinquish certain privacy interests for the privilege of driving, but retain options with respect to their conditional relinquishment of privacy, *i.e.* taking the test or refusing to take it and suffering the various collateral consequences. These Fourth Amendment considerations, however, are simply inapposite, here.

## C.

■ Appellant also contends that introduction of his refusal to take the test permitted speculation by the jury as to what the results of such a test would have been, thereby denying appellant due process of law. The Commonwealth

could not establish the time the shot was fired which killed the victim. According to appellant, because the test could only be effective if it was administered within two hours of a gun shot, the jury was encouraged to speculate that the test results would have been different had appellant consented and the test had been conducted an hour or more earlier, and that appellant's refusal to take the test therefore was equivalent to an admission of guilt. Appellant argues, essentially, that the trial court should have required the Commonwealth to establish that the test would have conclusively confirmed or dispelled appellant's participation in the victim's murder before permitting the Commonwealth to argue the inference of a consciousness of guilt. We cannot agree. While it is true that a prosecutor must limit statements to facts in evidence and legitimate inferences therefrom, *Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985), we, nonetheless, find that appellant's refusal to submit to the neutron activation test raised a legitimate inference of his "consciousness of guilt" whether or not the test could have established appellant's guilt. The time which elapsed between the victim's death and the request to take the test may have caused even an earlier test to be inconclusive. However, the inference of a consciousness of guilt arises not from the results such a test could actually have produced, but from the suspect's fear of what the test *might* have detected. Under the circumstances of this case, we find that there is sufficient support for the inference of a consciousness of guilt to raise it above the level of mere speculation. Hence we find appellant's final argument without merit.

We conclude, therefore, that the introduction into evidence of appellant's refusal to submit to the neutron activation test was not violative of appellant's rights pursuant to the Fifth and Fourteenth Amendments.

Based upon the foregoing, the judgment of sentence of the trial court is affirmed.

CAVANAUGH, J. files a dissenting statement.

CAVANAUGH, Judge, dissenting:

The majority has chosen to directly address two issues raised by appellant, and in both instances they affirm the admissibility and legal import of evidence. Since I feel that in each instance the trial court erred, I dissent.

As to appellant's first issue, I believe that the trial court committed error in charging the jury that it could consider the appellant's silence in response to questioning by the police for the purpose of assessing the credibility of his testimony. In my view, the use of a criminal defendant's silence for impeachment purposes under the circumstances presented by the facts in this case is a violation of that defendant's rights under the Fifth Amendment of the United States Constitution and Article I § 9 of the Pennsylvania Constitution.

To begin with, I do not accept the majority's characterization "that appellant's silence occurred at a pre-arrest stage" of this police investigation. The appellant appeared at the Holidaysburg Barracks of the Pennsylvania State Police and told the officers that he wanted to report a dead body located in his automobile parked in front of the barracks. Two officers went out to the automobile to investigate while appellant remained inside with a third trooper.

Appellant Monahan would not offer any explanation when he was asked to tell what had happened by the trooper who remained in the barracks. The record shows that as soon as the two officers who had been checking appellant's car returned Monahan was advised of his constitutional rights and searched. Thus the majority is focusing on the short time period it took to walk outside the barracks, check out appellant's automobile parked in front of the barracks, and re-enter the building as the "pre-arrest stage", during which Monahan's decision to remain silent may be used in evaluating his credibility. The majority points out that during the time period in question "[t]he police had no corroborative information that there was a dead body in the car or any information that a murder might have occurred," (Opinion, p. 629), and they also note that "[n]o physical or

verbal restraints were placed on appellant" (Opinion, p. 629). However, in spite of the fact that each of these assertions may be true, given the grave implication of his report to the police, it is impossible for me to believe that Donald Monahan would have been free to leave the state police barracks had he attempted to do so during the time period in question. To suggest otherwise under the circumstances outlined would seem to be incredible. I believe that if the appellant had attempted to leave at this point, he certainly would have been stopped. Simply because Donald Monahan did not put the state police to the test by attempting to leave the barracks and requiring them to use physical or verbal restraints on him does not, in my view, make this situation any less custodial.

"The determination of when an arrest occurs depends on an evaluation of all the surrounding circumstances." *Commonwealth v. Romeri*, 314 Pa.Super. 279, 288, 460 A.2d 1139, 1143 (1983), affirmed 504 Pa. 124, 470 A.2d 498, *certiorari* denied 466 U.S. 942, 104 S.Ct. 1922, 80 L.Ed.2d 469 (quoting *Commonwealth v. Crissy*, 304 Pa.Super 38, 450 A.2d 89 (1982)). An arrest may be effectuated without the use of force or physical restraint and without a formal statement of arrest. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); *Romeri, supra; Crissy, supra.* An arrest occurred at the point when appellant could reasonably have believed that the state police intended to take him into custody, and at that point all constitutional protections must be observed.

Because I believe appellant was under arrest at the time in question, I view *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982), as controlling. *Turner* held that a criminal defendant's post-arrest, pre-*Miranda* silence may only be introduced at trial by the Commonwealth to impeach the defendant if his testimony gives an account of events which is factually inconsistent with his silence at the time of arrest. For instance, if the defendant testifies to a version of events and claims that he relayed the same information to the police at the time of his arrest, the defendant's

silence may be introduced to impeach his testimony. "Absent such an assertion, the reference by the prosecutor to previous silence is impermissible," *Turner*, Id., 499 Pa. at 583, 454 A.2d at 540. In the case at bar, appellant did not testify that he told his version of the story to the police, which would have justified the use of appellant's silence to impeach such an assertion. Rather, the testimony regarding appellant's silence was offered by the Commonwealth's first witness at trial before the appellant had given any testimony. This statement of the Commonwealth's witness, compounded by the instructions given by the trial judge [1] allowing consideration of this silence by the jury in connection with its assessment of the defendant's credibility, is directly in violation of the rule in *Turner* and violates the appellant's right against self-incrimination.

Furthermore, accepting *arguendo* the assertion of the majority that appellant's silence in response to police questioning did occur at the pre-arrest stage in the investigation, I am still troubled by the trial court's charge allowing the jurors to consider this silence as a factor bearing on the appellant's credibility. Given that the appellant had no duty to speak or to respond in any way to police questioning, his failure to speak should not be used against him. To use even his pre-arrest silence for impeachment purposes in the manner presented by this case seems to me a violation of Donald Monahan's right against self-incrimination.

The second issue directly addressed by the majority approves of the Commonwealth's introduction of testimony

---

1. "... [Y]ou have heard evidence in this case concerning the failure of the defendant to give an explanation to the police at the State Police barracks as to what had occurred and also evidence regarding asking for an attorney or asking to speak with his attorney. You are hereby directed that a defendant's silence and/or his request for an attorney or to speak to an attorney is not any evidence of guilt whatsoever and should not be considered as such. A defendant's silence prior to being advised of his constitutional rights and prior to being taken into custody, however, may be considered in connection with a jury's assessment of defendant's credibility as a witness in this case in conjunction with all the other factors bearing on credibility but only for the purpose of credibility and only if you are satisfied that under all the circumstances then and there existing an explanation would naturally have been given by the defendant."

that appellant refused to submit to a neutron activation test (done to determine if the test subject has recently discharged a firearm), together with testimony that the test is only effective if promptly administered, on the basis that such refusal was not of a testimonial nature so as to implicate appellant's rights against self-incrimination, and that his refusal "raised a legitimate inference of his 'consciousness of guilt'" for the jurors' consideration. I disagree with those conclusions and would rule that the trial court again committed error in allowing the introduction of this testimony.

A view of the record shows that the state police requested that Monahan submit to a neutron activation test between 2:30 A.M. and 3:00 A.M. on the morning he came to the police barracks with the dead body in his car. On advice of counsel that he did not have to submit to the testing, Monahan refused to comply with this request, thus forcing the officers to obtain a warrant from a magistrate in order to proceed. The test was conducted at approximately 4:00 A.M. and the results were negative, meaning that Monahan's hands did not show evidence of his having fired a firearm.

At trial the Commonwealth offered the negative results of the neutron activation test, however, the state trooper who conducted the test went on to testify that such tests are only effective if conducted within two hours of the time the test subject last fired a gun. Reviewing the transcript of this testimony, which included hypothetical questions posed by the prosecutor concerning variations in the time frame of the victim's death, appellant's refusal to submit and the testing, leads me to conclude that the jurors were left with the distinct impression that the test results might not have been negative if the test had been conducted at the time appellant was initially requested to submit. Thus appellant's refusal to be tested, on advice of counsel, is used to suggest his guilty conscience, and this in spite of the fact that the Commonwealth offered no evidence to prove the

time of the victim's death or the time that the shooting might have occurred.

The majority correctly points out that the gathering of evidence by conducting a physical test is not testimonial in nature and does not result in a criminal defendant being compelled to offer evidence against himself. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). However, if a jury is permitted to infer that appellant's refusal to submit to such a test exhibits a consciousness of his own guilt, I suggest that the character of the evidence is now of a testimonial nature which does implicate his rights against self-incrimination.

Monahan's refusal was used at trial to indicate that he must have known that the test results would prove he had fired a gun recently. As was noted in an opinion of this court dealing with the issue of admissibility of one's refusal to submit to a breathalyzer test, "Admittedly, a person may refuse to take a test for reasons that have nothing whatever to do with his guilt or innocence." *Commonwealth v. Robinson,* 229 Pa.Super. 131, 148, 324 A.2d 441, 450 (1974). In the case at bar, appellant's refusal was on advice of his attorney. It seems meaningless to inform a criminal defendant that he has a right to counsel if the Commonwealth is permitted to then penalize that defendant if he should listen to advice of counsel by suggesting such behavior indicates a guilty conscience.

I would conclude that a criminal defendant's refusal to cooperate in an evidence-gathering test may not be used against him, particularly to suggest that the delay caused by his refusal defeated the Commonwealth's ability to effectively prove its case.

I would grant a new trial.