STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. PAUL GORDON CARY, DEFENDANT-APPELLANT.

Argued April 24, 1967—Decided June 6, 1967.

344

*Mr. Richard S. Semel* argued the cause for appellant (*Mr. Oscar F. Laurie,* attorney; *Mr. Richard S. Semel* on the brief).

*Mr. Michael Diamond,* Assistant Prosecutor, argued the cause for respondent (*Mr. Leo Kaplowitz,* Union County Prosecutor, attorney; *Mr. Michael Diamond* on the brief).

The opinion of the court was delivered by

PROCTOR, J. This is an interlocutory appeal in a murder case from two pretrial orders of the Union County Court granting motions by the State compelling defendant to sub-

mit to a blood-grouping test and to a recording of his voice. We granted defendant's motion for leave to appeal.

Defendant was indicted for the murder of Joann Tyler by the Union County Grand Jury on April 21, 1966. His trial was set for December 5, 1966. This date was adjourned until December 7 to accommodate defense counsel. On December 7 the trial judge, on being informed that the State anticipated a trial lasting some three weeks and into the Christmas recess and holiday period, adjourned the trial date to January 16, 1967.

The State then moved for an order to compel defendant to submit to a recording of his voice. The assistant prosecutor in his affidavit in support of this motion deposed that: 1) the police had a tape recording of a male voice telephoning the police station with information about the crime; and 2) an expert in voice identification could determine whether defendant was the telephone caller by comparing the tape recording held by the police with a tape recording of defendant's voice.

The State also moved for an order to compel defendant to submit to a blood-grouping test. In his affidavit in support of this motion the assistant prosecutor deposed that both the victim and her assailant had suffered wounds and that knowledge of defendant's blood type might be probative at trial.

These motions were argued after due notice to the defendant and with full opportunity for defense counsel to be heard. The trial judge granted both motions. The defendant was ordered to submit to a recording of his voice, to speak in a normal, audible, conversational tone, to answer questions relative to his place of birth and present military status, and to say on three occasions during the recording: "Ah, I would like to, duh, the—I would like to talk to Sergeant on desk." The order prohibited any questions relating to guilt or innocence of the crime charged. The order provided that defense counsel was to receive due notice of the date of the recording and should be present at the recording together with—if defendant so requested—a qualified expert to act on behalf of defendant. The order further provided that if the State de-

cided to use any evidence obtained as a result of the recording, it must give defense counsel copies of all expert reports within five days of receipt by it of such reports and furnish defense counsel full opportunity to inspect and use all relevant recordings. The order also required that the reports of defense experts be made available to the State.

The order compelling defendant to submit to a blood test provided that the blood sample "be taken by a medical doctor within the confines of an accredited hospital using all the usual medical safeguards to prevent infection; that the defendant and the attorney for the defendant be given reasonable notice of the time and place of the taking of the sample so that the latter may be present, that a report be made as to the result of the sample being tested and a copy of said report be sent to the attorney for defendant within five days of its receipt by the Office of the Prosecutor * * *."

On this appeal defendant argues that the orders compelling him to submit to blood and voice tests violate his right to due process and his privilege against self-incrimination.

The New Jersey statute which grants a privilege against self-incrimination contains the following exception:

"[N]o person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition * * *" *N. J. S.* 2A:84A–19(a).

We have held that compelling a person to speak for purposes of a voice identification is within this exception because the physical properties of a person's voice are "identifying characteristics" and constitute a "physical condition" not privileged. *State v. King,* 44 *N. J.* 346, 357 (1965). In the *King* case we further held that the constitutional rights of a defendant in a criminal case are not violated when he is compelled to speak so that a witness may hear the qualities of his voice. *Id.,* at *pp.* 357–358; *King v. Pinto,* 376 *F.* 2d 593 (3 *Cir.* 1967) (same case in federal *habeas corpus* proceedings). We have also held that the taking of blood for a test is not cov-

ered by the privilege against self-incrimination. *State v. Blair,* 45 *N. J.* 43, 46 (1965) ; *State v. Alexander,* 7 *N. J.* 585, 593 (1951), *cert.* denied 343 *U. S.* 908, 72 *S. Ct.* 638, 96 *L. Ed.* 1326 (1952). In other cases we have repeated the reasoning of *King* and *Blair* that a person's voice and blood are physical characteristics like fingerprints, are not testimonial in character, and are therefore not protected from disclosure by statutory or constitutional prohibitions against self-incrimination : when a person's blood and voice are tested for their physical properties, the person is not required to vouch for the truth or falsity of anything. *State v. Mark,* 46 *N. J.* 262, 276–277 (1966) ; *State v. Fioravanti,* 46 *N. J.* 109, 119–120 (1965), *cert.* denied 384 *U. S.* 919, 86 *S. Ct.* 1365, 16 *L. Ed.* 2d 440 (1966). See 8 Wigmore, *Evidence* § 2265, 391 and 396 (*McNaughton rev.* 1961).

The United States Supreme Court in an opinion by Justice Brennan has recently upheld the constitutionality of compelling a person to submit to a blood test. *Schmerber v. State of California,* 384 *U. S.* 757, 86 *S. Ct.* 1826, 16 *L. Ed.* 2d 908 (1966). Defendant was arrested at a hospital while receiving medical attention for injuries he suffered in an automobile accident. The arresting officer ordered a sample of blood to be taken by a physician to determine the percentage of alcohol in defendant's blood. Defendant on advice of his counsel refused to consent to the test, and the sample was taken over his express objection. Evidence obtained as a result of the blood test was admitted at defendant's trial where he was found guilty of driving an automobile while under the influence of intoxicating liquor.

The Court held that the compelled test did not deprive defendant of his privilege against self-incrimination :

"We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends." *Id.,* 384 *U. S.,* at *p.* 761, 86 *S. Ct.,* at *p.* 1830, 16 *L. Ed.* 2d, at *p.* 914.

Because there was no privilege to refuse to submit to the test, defendant was not denied the assistance of counsel when the erroneous advice of his attorney was not respected. *Id.*, 384 *U. S.*, at *pp.* 765–766, 86 *S. Ct.* 1826, 16 *L. Ed. 2d*, at *p.* 917. The Court recognized that because the test required an intrusion into the body of defendant, under the Fourth Amendment it must be supported by probable cause and must be conducted so as to minimize any intrusive effect. The Court held that the circumstances justified a search without a warrant and that the procedure followed was not unreasonable. *Id.*, 384 *U. S.*, at *p.* 772, 86 *S. Ct.* 1826, 16 *L. Ed. 2d*, at *p.* 920.

Defendant in the present case argues that compelling him to submit to a blood test violates his right to due process and cites for support *Rochin v. People of California,* 342 *U. S.* 165, 72 *S. Ct.* 205, 96 *L. Ed.* 183 (1952). He seeks to distinguish *Schmerber* by saying that if he physically resists the test, his blood cannot then be constitutionally taken, whereas defendant in *Schmerber,* after refusing his consent, offered no resistance. To take his blood against his active resistance, defendant here continues, will transgress that "sense of justice" which *Rochin* required under due process.

In *Rochin* the use of evidence obtained by pumping a defendant's stomach in a manner the Court characterized as "brutal" was deemed to be a denial of due process in that the conduct of the police "shocks the conscience." The blood test proposed in the present case is far different from the abusive procedure used in *Rochin*. As the Supreme Court said in a subsequent case when affirming the admissibility of results of a blood test made without the consent of the accused against the challenge that the procedure violated the *Rochin* doctrine:

"The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests

before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors. Likewise, we note that a majority of our States have either enacted statutes in some form authorizing tests of this nature or permit findings so obtained to be admitted in evidence. We therefore conclude that a blood test taken by a skilled technician is not such 'conduct that shocks the conscience,' *Rochin, supra* (342 *U. S.*, at *p.* 172, 72 *S. Ct.*, at *p.* 209), nor such a method of obtaining evidence that it offends a 'sense of justice' * * *." *Breithaupt v. Abram,* 352 *U. S.* 432, 436–437, 77 *S. Ct.* 408, 410, 1 *L. Ed.* 2d 448, 451–452 (1957).

■ The motion for the blood test in the present case was supported by an affidavit which showed a likelihood that relevant evidence might be discovered. The order was made on conditions which gave the utmost possible precaution and consideration to defendant's right to privacy and to be free of unreasonable intrusion. Defendant had full opportunity in open court to present any claim that as to him an otherwise common and harmless procedure might be an unusual hardship. He made no such objection. It does not in the slightest "shock the conscience" that defendant under these stringently limited conditions and with the safeguards contained in the order must submit to a blood test that may produce valuable objective facts bearing on guilt or innocence. See *Breithaupt v. Abram, supra.* If the defendant chooses to resist, the physician performing the test together with other authorized personnel may take such medically appropriate steps as they would use to control any difficult patient; only inappropriate force is condemned. See *Schmerber, supra,* n. 4, 384 *U. S.*, at *p.* 760, 86 *S. Ct.*, at *p.* 1830, 16 *L. Ed. 2d,* at *p.* 913; Note, 33 *Brooklyn L. Rev.* 129, 131 (1966); Note, 41 *Tulane L. Rev.* 132, 138 (1966).

The order compelling defendant to submit to a recording of his voice must be separately considered. Defendant concedes that the "raw material" of his voice is not protected by his privilege against self-incrimination. However, he argues that he cannot be forced to talk against his will without violation of due process.

The voice test requested by the State raises special problems not considered in previous cases involving voice identification. The expert retained by the State, Lawrence G. Kersta, apparently has developed a technique and equipment which enable the operator to make a visual picture or "voiceprint" of a person's voice from a tape recording. Mr. Kersta's experience indicates that no two persons will produce identical voiceprints. He claims that whether or not an unknown voice on tape is that of a particular person can by his technique and equipment be determined with the accuracy of fingerprint identification. See Kersta, "Speaker Recognition and Identification by Voiceprints," 40 *Conn. B. J.* 586 (1966); see also Walter Sullivan, " 'Voiceprint' Used in Identification," *New York Times,* May 24, 1962, at *p. 37, col.* 8. Such a process for determining identification—and therefore often guilt or innocence—would be a highly desirable aid to judicial determinations of truth.

■■ However, a defendant has a right to privacy protected by the Fourth Amendment. *Warden, Maryland Penitentiary v. Hayden,* 387 *U. S.* ——, 87 *S. Ct.* 1642, 18 *L. Ed. 2d* 782 (May 29, 1967). We believe that before an intrusion into a person's privacy can be proper within the protections afforded by the Fourth Amendment, the product of the search must have the *capacity* to be admissible in evidence. For example, in *State v. Driver,* 38 *N. J.* 255, 261 (1962) this Court held that results of a polygraph (lie detector) test are inadmissible because the polygraph has not attained scientific acceptance of its accuracy; therefore, apart from problems under the Fifth Amendment, a defendant could not be compelled to take a polygraph test. The State here does not request that defendant speak so that human witnesses may listen to his voice as was done in *King, supra.* The State requests the order compelling defendant to speak into a tape recorder only so that a voiceprint of defendant's known voice may be made and compared with the voiceprint made from the tape recording of the call to the police station.

We have found no written opinion by a state or federal court that has considered the admission of voiceprint evidence. However, the admission of such evidence by an Air Force Court Martial has been affirmed in a written opinion of the Air Force Board of Review. *U. S. v. Wright, C. M. R.* (*A. F. B. R.* 1966). Also, trial judges in New York and California have admitted voiceprint evidence. See *New York Times,* April 12, 1966, at *p.* 1, *col.* 2; *Los Angeles Times,* March 26, 1967 (Magazine), at *p.* 12; 89 *N. J. L. J.* 776, *col.* 1 (December 1, 1966). In this State Judge Conklin of the Superior Court has ordered a tape recording for purposes of voiceprint identification without ruling on admissibility. *State v. McKenna,* 94 *N. J. Super.* 71 (*Cty. Ct.* 1967).

▉ Although a trial judge generally should not rule on the admissibility of particular evidence until a party offers it at trial, the defendant's Fourth Amendment right to privacy requires that some preliminary finding of capacity to produce admissible evidence be made before the defendant is ordered to submit to a test. We therefore believe it necessary to remand the matter of the order compelling defendant to submit to a voice test so that the trial court may determine whether the voiceprint technique and equipment are sufficiently accurate to produce results admissible as evidence. For purposes of the hearing defendant at his request, within reasonable limits, shall have one or more experts appointed to act on his behalf.

An actual demonstration which shows the accuracy of the voiceprint process would be desirable. The testimony of experts in addition to Mr. Kersta who believe that voiceprint identification is scientifically sound would be helpful. Although we do not wish to dictate in advance the details of the hearing, we do feel that something more than the bare opinion of one man, however qualified, is required. Certainly, the prosecutor must satisfy the trial judge that identification by voiceprint technique and equipment has a sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of truth.

■ ■ Because the point has been argued before us and will be relevant on the remand should the trial judge determine that the voiceprint process has the capacity to produce admissible evidence, we proceed to consider defendant's contention that an order directing him to speak should not be made because it cannot be enforced over his refusal to cooperate. It is true that there are no usual procedures to obtain voice samples from a resisting person such as those used by a physician to obtain a blood sample from a difficult patient. No procedure that would give a full measure of consideration to the constitutional rights of such a resisting defendant has been suggested to us. However, we do not believe that such an order would be without sanction to obtain enforcement. Of course, willful violation of a court order may itself be a contempt. See *N. J. Dept. of Health v. Roselle,* 34 *N. J.* 331, 336–337 (1961). And perhaps of greater effectiveness in cases of serious crime, we believe that after a judge has issued an order determining that a sample of defendant's voice may be obtained and defendant has thereby been unambiguously informed that he has no privilege or constitutional right to refuse, his continued refusal could properly be the subject of comment by the prosecutor and the trial judge as showing consciousness of guilt and inconsistency with a claim of innocence. *People v. Ellis,* 55 *Cal. Rptr.* 385, 421 *P. 2d* 393 (*Cal. Sup. Ct.* 1966); *cf. State v. Hill,* 47 *N. J.* 490, 500–501 (1966).

■ *Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965), declared that a comment by a court or prosecutor on a defendant's refusal to testify was unconstitutional because it infringed on a defendant's privilege against self-incrimination. See *State v. Lanzo,* 44 *N. J.* 560 (1965). However, as we have held and defendant here concedes, the physical properties of a person's voice are not testimonial or communicative; therefore, comment on a defendant's willful refusal to permit the obtaining of a sample of his voice would not infringe upon the defendant's Fifth Amendment rights. This very point was recently given extensive

consideration by the California Supreme Court in *People v. Ellis, supra.* Chief Justice Traynor, writing for the Court, rejected a defendant's contention that comment on his refusal to participate in a voice test was proscribed by *Griffin*:

"Such a rule is not applicable when, as in this case, the defendant has no constitutional right to refuse to speak solely for purposes of voice identification.

Nor was defendant's refusal to 'display his voice' itself a testimonial communication. It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody * * * false alibi * * * flight * * * suppression of evidence * * * and failure to respond to accusatory statements when not in police custody * * * its admission does not violate the privilege * * *

\* \* \* \* \* \* \* \*

Evidence of the refusal is not only probative ; its admission operates to induce suspects to cooperate with law enforcement officials. Only the overriding interest in protecting the privilege against compulsory self-incrimination, itself the result of a delicate balance, prohibits evidence or comment in the refusal to testify cases. But the privilege itself is not at issue here. *Without exception, none of the reasons that support the privilege lends support to a rule that would exclude probative evidence obtained from an accused's effort to conceal non-privileged evidence.*" (Emphasis added) *Id.,* 55 *Cal. Rptr.,* at *pp.* 389–390, 421 *P. 2d,* at *pp.* 397–398.

The same Court in an opinion again written by its Chief Justice also held that a refusal to take a breathalyzer test could be commented upon by the prosecutor and judge because defendant had no privilege to refuse to take the test. *People v. Sudduth,* 55 *Cal. Rptr.* 393, 421 *P. 2d* 401 (1966).

We might also give recognition here to the great value that objective physical evidence has in the judicial determination of truth. See *McCormick, Evidence c.* 20 (1954) ; *Richardson, Modern Scientific Evidence, c.* 1 (1961). In recent years courts have shown an increasing reluctance to rely on the traditional testimonial evidence obtained—often under questionable circumstances—from the lips of the accused. This kind of testimonial proof ordinarily works only one way, that is, to convict. But the objective evidence of blood or voice tests will often be the means to demonstrate

the innocence of an accused. As the United States Supreme Court said:

> "Modern community living requires modern scientific methods of crime detection lest the public go unprotected * * * And the more so since [such tests] likewise may establish innocence, thus affording protection against the treachery of judgment based on one or more of the senses." *Breithaupt v. Abram, supra,* 352 *U. S.,* at *p.* 439, 77 *S. Ct.,* at *p.* 412, 1 *L. Ed. 2d,* at *pp.* 452–453.

New Jersey was an early state in the recognition of finger-print evidence, *State v. Cerciello,* 86 *N. J. L.* 309 (*E. & A.* 1914), a type of investigative aid which now possesses un-questioned value. We recognize several tests which determine the percentage of alcohol in a person's blood. See *State v. Johnson,* 42 *N. J.* 146, 170–171 (1964). New techniques for measurement of distinctive physical characteristics, if sufficiently accurate to be admissible in court, are needed and welcome in the judicial process.

 Defendant's claim that compelling him to submit to blood and voice tests will deny him his constitutional right to a speedy trial needs no discussion as it is plainly without merit.

For the foregoing reasons the order of the trial court compelling defendant to submit to a blood-grouping test is affirmed, and the order compelling defendant to submit to a voice test is remanded for further pretrial proceedings not inconsistent with this opinion.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.