Dennis Michael **McCAMBRIDGE, Appellant,**

v.

The **STATE of Texas, Appellee.**

No. 01–84–0507–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 1985.

Rehearing Denied Sept. 19, 1985.

Discretionary Review Granted Nov. 13, 1985.

Gary Trichter, Nelson & Mallett, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., James C. Brough, Jon Munier, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

EVANS, Chief Justice.

After a non-jury trial, the court found appellant guilty of the misdemeanor of-

fense of driving while intoxicated and assessed his punishment at six months confinement, probated for two years, and a $200 fine.

The appellant filed a motion to suppress the results of the video-tape made and a breath-alcohol test taken at the time of his arrest in May 1984. After hearing the motion, the trial court suppressed the audio portion of the video-tape, but denied the motion to suppress the results of the breath test. Pursuant to a plea bargain agreement, the appellant then waived his right to a jury trial and pleaded guilty before the court.

In three grounds of error, the appellant contends that the trial court erred in refusing to suppress the breath test, arguing that: (1) it was obtained in violation of his right to assistance of counsel; (2) he did not knowingly, intelligently, or voluntarily consent to the test; and (3) it was obtained in violation of his constitutional rights, because the police continued to interrogate him after he requested counsel.

As a threshold matter, the state contends that there is nothing before this Court for review, because the record does not contain a transcription of the hearing on appellant's guilty plea. The state argues that we must assume that there was some evidence presented, in addition to the breath test, that would support a conviction. It asserts that the absence of a statement of facts on the guilty-plea hearing distinguishes this case from, and makes inapplicable, *Isam v. State*, 582 S.W.2d 441 (Tex.Crim.App.1979), which held that an appellant may challenge an adverse ruling on his motion to suppress even though he later pleaded guilty to the misdemeanor charges against him. We find the state's distinction unpersuasive and overrule its contention. In *Isam*, the Court of Criminal Appeals expressly held that a defendant may seek appellate review of the denial of a pre-trial motion, despite the fact that he pleaded guilty to the misdemeanor charged. *Id.* at 444.

We first consider the appellant's contention that his motion to suppress should

have been granted, because he was deprived of his right to assistance of counsel. In support of this contention, appellant cites the recent decision of *Forte v. State*, 686 S.W.2d 744 (Tex.App.—Fort Worth 1985, pet. pending), which held that an accused had a limited right to assistance of counsel before having to decide whether to take or to refuse a breath test. The court concluded that this was a critical stage of the criminal pretrial proceedings and that the accused had the right to consult with a lawyer, provided that the consultation did not unreasonably delay the administration of the test. The appellant also refers to decisions of several federal courts and of other state courts that have expressly or impliedly recognized the right to counsel in such proceedings. *See, e.g., State v. Fitzsimmons*, 93 Wash.2d 436, 610 P.2d 893, *vacated on other grounds*, 449 U.S. 977, 101 S.Ct. 390, 66 L.Ed.2d 240 (1980); *State v. Welch*, 135 Vt. 316, 376 A.2d 351 (1977).

The appellant was arrested about 11 p.m., while he was driving alone and on his way home. As he was being placed in the police car at the arrest location, he asked for the assistance of a lawyer. The arresting officers replied that he could not have a lawyer until he got downtown. He was then taken to the central police station and placed in an interrogation room. Once there, the officers informed him of his right to remain silent and to have a lawyer present during questioning. The appellant again asked for a lawyer and was allowed to use the telephone.

The appellant called his wife with instructions to contact an attorney, but he was told by the officers that he could not give out a telephone number for any return calls. After this abortive attempt to obtain counsel, the appellant was questioned by the officers, despite his requests that he wanted a lawyer present during the interrogation. He was allowed to telephone a second time, but this time he obtained only a busy signal. The police then continued their questioning. Appellant testified that each time he attempted to invoke his constitutional rights, the officer's attitude and

tone of voice became increasingly hostile. The video interview ended abruptly, and the appellant was then taken out into the hallway, where another policeman tried to persuade him to take the breath-alcohol test. The appellant testified that he finally acquiesced and took the breath test.

■ A person who operates a motor vehicle on a public highway, and who is arrested for driving while intoxicated, is statutorily "deemed" to have consented to the taking of breath or blood specimens for determining the presence of alcohol concentration in the body. Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5, sec. 1 (Vernon Supp.1985). The statute also defines the term "intoxicated" as meaning (a) that a person does not have the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; or (b) that there is a blood-alcohol concentration of 0.10 percent or more. Tex.Rev.Civ.Stat.Ann. art. 6701*l*–1(a)(2) (Vernon Supp.1985).

The statute provides that the specimen must be taken at the request of a peace officer having reasonable grounds to believe that the person was driving while intoxicated, and that if the arrested person refuses the peace officer's request, a specimen shall not be taken. Art. 6701*l*–5, sec. 2(a). The peace officer must inform the arrested person orally and in writing that if the request for a specimen is refused, such refusal may be admissible in a subsequent prosecution and that the person's driver's license will be automatically suspended for 90 days, whether or not the person is subsequently prosecuted as a result of the arrest. Art. 6701*l*–5, sec. 2(b).

The United States Supreme Court has long upheld statutes that deem drivers to have waived certain constitutional rights as a condition of receiving a state license to drive a motor vehicle. For example, in *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), the Court upheld an implied-consent law that appointed a state officer as agent for service of process upon any non-resident driver who operated a motor vehicle on a public road. The Court found that the state's highway regulatory power included the power to require a driver to appoint an agent in advance of the operation of a motor vehicle on its highways, and thus, the state could declare the use of its highways to be the equivalent of such an appointment. *Id.* at 356–57, 47 S.Ct. at 633–34. *See also Breithaupt v. Abram*, 352 U.S. 432, 435 n. 2, 77 S.Ct. 408, 410 n. 2, 1 L.Ed.2d 448 (1957).

We reject appellant's contention that he had a constitutional right to refuse to submit to the breath test. In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that the constitutional privilege against self-incrimination protects only "testimonial" communications. The results of blood alcohol-content tests, made from blood samples drawn from the defendant without his consent, were held to be admissible at trial, because such samples were not testimonial communications within the protection of the fifth amendment. The Court rejected claims that the procedure denied the suspect due process of law under the fourteenth amendment, violated his privilege against self-incrimination under the fifth amendment, and denied his right to counsel under the sixth amendment. The Court's rejection of the right to counsel claim is especially pertinent. It held:

> Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on [self-incrimination] privilege grounds.

> This conclusion also answers petitioner's claim that, in compelling him to submit to the test in face of the fact that his objection was made on the advice of counsel, he was denied his sixth amendment right to the assistance of counsel. Since petitioner was not entitled to assert the [self-incrimination] privilege, he has no greater right because counsel erroneously advised him that he could assert it. His

claim is strictly limited to the failure of the police to respect his wish, reinforced by counsel's advice, to be left inviolate. *No issue of counsel's ability to assist petitioner in respect of any rights he did possess is presented.* The limited claim thus made must be rejected.

*Id.* at 765–66, 86 S.Ct. at 1832–33 (emphasis added). Finally, in *South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), the Court held that evidence at trial of the defendant's refusal to provide a breath sample did not violate the fifth amendment privilege against self-incrimination.

The Texas Court of Criminal Appeals has found the scope of the Texas constitutional privilege against self-incrimination to be identical to that of the fifth amendment of the United States Constitution. *Olson v. State,* 484 S.W.2d 756 (Tex.Crim.App.1969). It has also expressly recognized the holding of *Schmerber* that only testimonial communication is constitutionally protected. *Turpin v. State,* 606 S.W.2d 907, 913–14 (Tex.Crim.App.1980) (en banc).

In *Rodriguez v. State,* 631 S.W.2d 515 (Tex.Crim.App.1982), the court applied this reasoning and ruled that, because taking a breathalyzer test was not protected testimonial communication, the failure to give *Miranda* warnings or statutory warnings, Tex.Code Crim.P.Ann. art. 38.22 (Vernon 1979), did not make evidence of breath-test results inadmissible at trial, where there was no evidence that the accused refused to take the test. 631 S.W.2d at 517.

■ The constitutional right to assistance of counsel attaches when adversary judicial proceedings are initiated against an accused, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and the government has committed itself to prosecute. 406 U.S. at 689, 92 S.Ct. at 1882. The defendant is entitled to the presence of counsel at critical confrontations with the state to assure that his right to a fair trial will be protected. *See United States v. Wade,* 388 U.S. 218, 226–27, 87 S.Ct. 1926, 1931–32, 18 L.Ed.2d 1149 (1967). But we disagree with the analysis in *Forte,* con-

cluding that it is a critical stage in the proceedings when a police officer requests a breath test. Preparatory steps in the state's gathering of evidence, such as taking fingerprints or a blood sample, have been held not to constitute a critical stage in the prosecution of the accused. *Wade,* 388 U.S. at 227–28, 87 S.Ct. at 1932–33; *see also Yates v. State,* 679 S.W.2d 534, 536 (Tex.App.—Tyler 1984, pet. ref'd).

■ Because the appellant's refusal to take the breath test was not constitutionally protected, and because this was not a critical stage of the prosecution against the appellant, we hold that he was not entitled to consult an attorney before deciding whether to refuse to take the breath test. We decline to follow the majority holding in *Forte v. State,* and instead, we adopt the reasoning of *Schmerber, Kirby,* and *Wade.*

We accordingly overrule the appellant's first and third grounds of error.

We next consider appellant's second ground of error, in which he contends that the trial court erred in refusing to suppress the results of the breath test, because he did not knowingly, intelligently, or voluntarily consent to the test.

■ Although the statute provides that consent is effectively given by any person operating a motor vehicle under the conditions stated, it expressly states that no specimen shall be taken if the accused refuses the peace officer's request. An accused's "consent" to take the test is ineffective unless voluntarily given, which is a question of fact for the factfinder. *Turpin,* 606 S.W.2d at 914.

■ We may only speculate whether a person with a blood-alcohol content in excess of the statutory minimum could "knowingly and intelligently" decide whether to submit to the taking of a blood or breath specimen. But an accused's statutory right of refusal under article 6701*l*–5 does not appear to require the same kind of intelligent and knowing decision as is required for an effective waiver of the constitutional privilege against self-incrimination.

Indeed, the statute authorizes the withdrawal of a specimen from a person who is "dead, unconscious, or otherwise in a condition rendering the person incapable of refusal." Art. 6701*l*–5, sec. 3(h). What the statute does seem to prohibit is the violent taking of a specimen from a resisting, conscious person who refuses to signify his cooperation by signing the request form specified in section 2(c).

 In this case, the appellant does not contend that he submitted to the breath test because of any violence or trickery on the part of the peace officers. *Compare Turpin*, 606 S.W.2d at 913–14. He contends only that he eventually agreed to take the test, because he felt pressured to do so by the officers' persistence and hostile attitudes. A police inquiry as to whether a D.W.I. suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748. The question of whether appellant's consent was knowing and voluntary was one for the trier of fact, who could reasonably have concluded that the appellant voluntarily consented to take the breath test. The trial court did not err in denying the appellant's motion to suppress. *See Tomtishen v. State*, 688 S.W.2d 138 (Tex.App.—Corpus Christi 1985, no pet.). We overrule appellant's second ground of error.

We affirm the judgment of the trial court.

COHEN, Justice, concurring.

I believe there is more to say concerning why an accused has no constitutional right to counsel in deciding whether to give a breath test, even though sec. 2(a), article 6701*l*–5 provides that no test shall be given if the accused refuses.

The *statutory* provision that no test shall be given if the accused refuses is not *constitutionally* based; indeed, refusing to give a blood or breath sample is illegal under Texas law. Punishment is severe and mandatory. Thus, refusal to give a specimen, contrary to one's implied consent, should not be encouraged by extending to the would-be refuser the assistance of counsel. An accused is not entitled to follow counsel's advice to refuse to submit to fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to assume a stance, to walk or to make a particular gesture. *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966). These are all physical evidence. None is within the protection of the Fifth Amendment, because none is testimonial, and the same is true of breath and blood samples.

The Supreme Court of California was among the first to so hold. In *People v. Sudduth*, 65 Cal.2d 543, 421 P.2d 401, 55 Cal.Rptr. 393 (1966), *cert. denied*, 389 U.S. 850, 88 S.Ct. 43, 19 L.Ed.2d 119 (1967), Chief Justice Roger Traynor held that evidence could be admitted showing that a defendant refused a chemical test. He wrote:

> The sole rationale for the rule against comment on a failure to testify is that such a rule is a necessary protection for the exercise of the underlying privilege of remaining silent [citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)]. A wrongful refusal to cooperate with law enforcement officers does not qualify for such protection. A refusal that might operate to suppress evidence of intoxication, which disappears rapidly with the passage of time, should not be encouraged as a device to escape prosecution.

421 P.2d at 403 (citations omitted). *Sudduth* was decided only six months after the U.S. Supreme Court decision in *Schmerber v. California*. At least five state supreme courts had reached the conclusion of *Schmerber* and *Sudduth* years earlier, and more soon followed the same reasoning. *State v. Durrant*, 55 Del. 510, 188 A.2d 526 (1963); *State v. Bock*, 80 Idaho 296, 328 P.2d 1065 (1958); *Alldredge v. State*, 239 Ind. 256, 156 N.E.2d 888 (1959); *State v. Benson*, 230 Iowa 1168, 300 N.W. 275 (1941); *Gardner v. Commonwealth*, 195 Va. 945, 81 S.E.2d 614 (1954). Decisions

after *Sudduth* reaching the same conclusion include *State v. Dugas,* 252 La. 345, 211 So.2d 285 (1968); *State v. Meints,* 189 Neb. 264, 202 N.W.2d 202 (1972); *State v. Cary,* 49 N.J. 343, 230 A.2d 384 (1967); *City of Westerville v. Cunningham,* 15 Ohio St.2d 121, 239 N.E.2d 40 (1968); *Commonwealth v. Robinson,* 229 Pa.Super. 131, 324 A.2d 441 (1974); *State v. Miller,* 257 S.C. 213, 185 S.E.2d 359 (1971); *City of Waukesha v. Godfrey,* 41 Wis.2d 401, 164 N.W.2d 314 (1969).

These cases all hold that evidence of refusal to take a chemical test may be admitted in evidence without violating any right protected by the United States Constitution. They proceed on the theory that the refusal is wrongful, that the consent to extraction of a sample is given by the act of driving, and that no lawful choice is available to the driver at the time testing is sought. This reasoning would lead, as in *Schmerber,* to the conclusion that "no issue of counsel's ability to assist petitioner in respect of any of the rights he did possess is presented." 384 U.S. at 766, 86 S.Ct. at 1833.

Even those who advocate the right to counsel in these circumstances recognize the heavy weight of authority rejecting it. *See, e.g.,* R. Irwin, 3 *Defense of Drunk Driving Cases,* secs. 32.03, 33.06 (3d ed. 1980 and Supp.1981). Irwin writes:

> However, it must be noted that in the majority of jurisdictions governed by implied consent legislation which provides that a motorist is deemed to have consented to submit to a test by the very act of driving on public roads or within the State, it has been held that he has no right to the assistance of counsel before making a decision to decline because he has no legal right to refuse.

That the Texas Legislature did not intend to protect the refuser is demonstrated by the penalty imposed for refusing, suspension of the driver's license for 90 days. Article 6701*l*–5, sec. 2(f). The suspension is mandatory and is not excused by the fact that the refuser may have prevailed or never been prosecuted for the crime of driving while intoxicated.

It is inaccurate to refer to the provision in sec. 2(a) as a "right" to refuse. The statute says only that if a person under arrest refuses to give a specimen, "none shall be taken." It does not mention a "right to refuse" or any other "right." Any purported "right" so harshly penalized for its exercise is obviously very limited and entitled to little protection. Rather, the required abandonment of attempts at chemical testing merely expresses the legislature's decision against state sanctioned police violence that would otherwise result when citizens refused to give a specimen of blood or breath. The statutory recognition of the driver's de facto physical ability to conceal and destroy evidence by refusing to give a sample does not create a "right." The driver merely has the physical power to do a wrongful act, which is not the same as a "right" to do so. Thus, in *Bush v. Bright,* 264 Cal.App.2d 788, 71 Cal.Rptr. 123 (1968), the court held:

> It is firmly established that Bush has *no right* to resist or refuse such a test [citing *Schmerber v. California*]. It is simply because such a person has the *physical power* to make the test impractical and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness.

The court concluded:

> The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is "deemed to have given his consent" is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates.

71 Cal.Rptr. at 124–25 (emphasis in original). *See also Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971) (following *Bush v. Bright*); *State v. Miller,* 185 S.E.2d at 360 ("appellant urges that by the terms of [the implied consent law] he had the statutory right to refuse.... [W]e do not so construe the statute, which simply opts against forcible testing.") Decisions of courts throughout the

nation following and rejecting the rule in *Bush v. Bright* are analyzed in Cohen, *The Case for Admitting Evidence of Refusal to Take a Breath Test,* 6 Texas Tech.L. Rev. 927, 932–36 (1975).

Another reason why the suspect should not be constitutionally entitled to counsel before deciding whether to give a specimen is that unlawfully refusing to give a sample destroys evidence, because alcohol is quickly removed from the body with the passage of time. The unlawful refusal thus "closely resembles ... flight, escape, or destruction of evidence." Cohen, *supra,* at 944, cited with approval in *Dudley v. State,* 548 S.W.2d 706, 716 (Tex.Crim.App. 1977) (Roberts, J. dissenting). The U.S. Supreme Court has specifically referred to the human body's elimination of alcohol, combined with the suspect's wrongful refusal to provide a sample, as "destruction of evidence," justifying a warrantless search. *Schmerber v. California,* 384 U.S. at 770, 86 S.Ct. at 1835. While one may have the physical power to destroy evidence and may avoid prosecution by doing so, there should be no right to counsel's advice in making the decision. The severe, mandatory sanction of license suspension for 90 days effectively "equates a refusal with guilt and expresses a strong policy to protect the public from the threat of drunk driving,...." *People v. Paddock,* 29 N.Y.2d 504, 272 N.E.2d 486, 487, 323 N.Y. S.2d 976, 977–78 (1971) (Jasen, J. concurring). It underscores the illegality of the refusal and the impropriety of surrounding with constitutional protections an act not constitutionally protected.