Katherine Nicole MENDOZA, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–90–167–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 24, 1991.

Rehearing Denied Feb. 14, 1991.

Discretionary Review Refused May 15, 1991.

Brian W. Wice, J. Gary Trichter, Houston, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

ROBERTSON, Justice.

Appellant was charged by information with the misdemeanor offense of driving

while intoxicated. Trial was to the court following a plea of not guilty. Appellant was found guilty as charged and punishment was assessed at confinement in the Harris County Jail for 60 days, probated for two years, and a $250 fine. Appellant's sole point on appeal is that the trial court erred in not suppressing the "DWI videotape" because the state failed to show that appellant's consent was freely and voluntarily obtained. We affirm.

Appellant was stopped at approximately 2 a.m. after a police officer observed her erratic driving on a Houston freeway. When the officer asked for her driver's license and insurance papers, she "fumbled around inside her car momentarily" and the officer requested her to step out of the vehicle. When she did so, she had trouble standing and held onto her automobile for support. Appellant told the officer that her father was a lawyer, that she was a pre-law student, that she was not drunk, and that if she had to go downtown she would get out of it. The officer asked her to step upon the curb area where he planned to conduct some field sobriety tests, but as she stepped upon the curb she staggered to the extent that he felt it unsafe to proceed with the tests. He expressed the opinion appellant was intoxicated. Since he was a one-man unit and was at that time transporting a male prisoner to jail, he called for another police unit, a DWI task force officer.

When that officer arrived he proceeded to have appellant perform some field sobriety tests. After several were performed, the officer determined that appellant was "very intoxicated" and that to proceed with the tests was unwise because of his fear that appellant might fall and hurt herself or fall into a lane of traffic. Appellant was then transported to the Westside Command Station where an intoxilizer test was conducted and the "DWI videotape" was made. The intoxilizer showed an alcohol concentration of 0.16. The chemist testified that in her opinion an individual having an alcohol concentration of 0.08 is "definitely intoxicated."

After the state rested, appellant's counsel called the appellant as a witness "for the purpose of the Motion to Suppress only" which the trial judge had carried with the case. She denied that she was driving erratically and denied that she told the officer she could get out of it if she was taken downtown. She stated that she did tell the officer her father was an attorney and that she requested permission to call him, but the officer refused, stating she could do so when the test was completed. She stated that the officer told her that if she didn't take the test her license would be automatically suspended, that DWI charges would be filed and that she would "go to jail," which she didn't want to do. She stated that she was scared, intimidated, and did not voluntarily "take the test." At the conclusion of the testimony on the motion to suppress, the judge stated:

> All right. I'm going to grant the Motion to Suppress. It's my opinion from the testimony that I've heard, I feel like that taking into consideration everything I've heard including the age of this young lady and the situation where the officer testified that she stated her father was an attorney, that they requested an attorney. And therefore, I'm not going to consider anything that was done after that fact.

When appellant asked for clarification of the judge's order, the judge stated that he was suppressing "everything" and "I'm talking about video, breath, or anything else" that occurred after she asked for an attorney. Appellant then rested without calling witnesses on the merits of the case and requested argument.

The prosecutor protested the judge's ruling and requested time to present authorities. The trial court then granted both sides time to present "their version of what the law is." When court reconvened several days later the trial judge stated:

> Let me state that I think that I have spent more time on this case than I ever spent on a case, because it was very well prepared by both sides. I have read everything. I have looked at everything. I don't want to hear anymore. I'm going

to make my ruling, and I'm going to tell you what I'm going to do.

I'm going to suppress the breath test because I think from the evidence—and we have reread the evidence—from what I have remembered and what we have verified from the court reporter, it's my opinion that the breath test has to be suppressed. Because I feel like the lady felt at least that she was coerced into that. That's the only thing I'm going to suppress.

That leaves me with the testimony of the police officers and leaves me with the video. And based on that, I find the defendant guilty.

Appellant contends the trial court erred in overruling her motion to suppress the results of the video skills portion of the DWI videotape because the state failed to show that her purported consent to submit thereto was freely and voluntarily obtained. Appellant acknowledges that whether the trial court erred in ruling upon his motion to suppress must be determined upon an abuse of discretion standard. She argues, however, that since the judge suppressed the results of the intoxilizer test because he "felt at least that she was coerced into that," the judge abused his discretion in not likewise suppressing the video skills portion of the DWI videotape "on these very same grounds." She argues that "the same degree of coercion and law enforcement overreaching which compelled the trial court to suppress the intoxilizer test was so inextricably linked with the appellant's video-skills performance that her eventual consent to submit to the video-skills tests cannot, as a matter of law, be separated." The record does not support appellant's position.

While the record leaves much to be desired, it does seem plain to us that appellant's position that she did not voluntarily consent to the breath test was based upon her request for an attorney and her several times stated fear of going to jail which she said the officer told her would occur if she did not take the test. Further, this appears to be the basis for the two above-quoted oral pronouncements by the judge. How-

ever, appellant never stated that she performed the video-skills because of fear, nor did she ever state that she did not voluntarily engage in the video-taping. In fact, on cross-examination she specifically stated that the officers did not threaten her with jail if she refused the video.

The question of whether her consent was knowing and voluntary was one for the trier of fact. *McCambridge v. State*, 698 S.W.2d 390 (Tex.App.—Houston [1st Dist.] 1985), *aff'd;* 778 S.W.2d 70 (Tex.Crim.App. 1989). Upon this testimony alone, the trial court could have reasonably concluded that appellant voluntarily consented to the video-tape session. Appellant's point of error is overruled.

The judgment is affirmed.

SEARS, Justice, dissenting.

I respectfully dissent from the majority opinion.

It is clear from the record that the breathalyzer test and the motor skills test conducted in the DWI video tape room are inseparable. In reviewing the statement of facts, when the witnesses testify about "tests" it is difficult to determine whether they are speaking of intoxilyzer tests or motor skills tests. When the trial court found sufficient evidence to grant the appellant's motion to suppress the results of the intoxilyzer test, on the grounds that appellant's consent was coerced, the trial court should likewise have found that appellant's consent to perform the audio and motor skills tests was also coerced. See *Fisher v. State*, 379 S.W.2d 900 (Tex.Crim. App.1964) and *Washington v. State*, 582 S.W.2d 122 (Tex.Crim.App.1979).

The record is also clear that appellant initially refused both forms of testing but eventually submitted only because she "felt she had no other choice." The majority opinion is correct in stating that appellant failed to renew her demands to contact her father/attorney during the test in the DWI video tape room; however, she also testified that after being told by the police that she could not contact her father until they were through with her, she was "waiting for them to tell me when I could."

Because we are concerned for the victims of drunk drivers, and in reducing the fatalities and injuries caused by drivers who are intoxicated, Texas Courts have written bad law. With the fifth amendment to the United States Constitution as a guideline, the drafters of the Texas Constitution were very deliberate and precise in the language they used in an *attempt* to afford our citizenry greater protection under the Texas Constitution than was afforded under the fifth amendment of the United States Constitution. To that end, the Texas Constitution provides that no one shall be compelled to give *evidence* against themselves. TEX. CONST. art. I, § 10. While the U.S. Constitution prohibits a person from being forced to testify against himself or herself, the Texas Constitution goes a step further and prohibits the State from forcing a person to give *evidence* against themselves. Very clearly, a higher standard of protection is afforded under the Texas Constitution. Nonetheless, Texas Courts have held that the giving of blood, breath or urine is not "evidentiary" and therefore is not protected by the Texas Constitution. See *Forte v. State*, 707 S.W.2d 89 (Tex.Crim. App.1986); and *McCambridge v. State*, 712 S.W.2d 499 (Tex.Crim.App.1986). We have also held that giving up such bodily fluids is not testimonial. *See Miffleton v. State*, 777 S.W.2d 76, 81 (Tex.Crim.App.1989). It causes one to wonder, if the results of a intoxilyzer test are not evidentiary or testamonial, then how can they be used against an accused in a criminal trial? It would seem that if it is not evidentiary or testamonial, it should not be used against an accused. Yet we continue to provide a farce in DWI prosecution that is unique in Texas jurisprudence.

Except for the prosecution of persons charged with DWI, there is no other crime in Texas for which the State can force the accused to perform the very elements of the offense with which he is charged, record the performance and then replay it for the jury that sits in judgment of his case. A DWI defendant is charged with having "lost the normal use of his mental and physical faculties by reason of the introduction of alcohol ..., into his body." Incredibly, the State is allowed to audio and videotape the accused performing certain feats of mental and physical dexterity in order to have the accused *prove by his own actions* that he has indeed lost the normal use of his mental and physical faculties. These are the essential elements of the crime which the State must prove in order to obtain a conviction. Again, there is no other crime in Texas for which the State can record the accused performing the act with which he is charged, and then use that as evidence to prove he committed the crime. In order to justify this unprecedented behavior, Texas courts arrive at what is supposed to be a logical conclusion and hold that the video tape is not "testamonial" and allow the State to use it as evidence to prove the charges against the accused. *Miffleton*, 777 S.W.2d at 81.

The growing number of DWI offenses in this State is indeed a serious problem that demands a solution. However, it is my opinion that distorting our caselaw and infringing upon the constitutional rights of our citizens is not a proper or acceptable solution. I recognize that what I say will have little or no affect on our body of caselaw as it is dicta in a dissent; however, the DWI video room is a "windmill" that just invites jousting.

It is my belief that based upon the evidence, any consent on the part of the appellant to perform in the videotape room was coerced, not voluntary, and therefore inadmissible. I would reverse the judgment of the trial court and remand for a new trial.