J-S04023-21
J-S04024-21
J-S04025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MANLEY CHARLES CHAPMAN | |
| Appellant | No. 353 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020
In the Court of Common Pleas of Bradford County
Criminal Division at No.: CP-08-CR-0000564-2019

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MANLEY CHARLES CHAPMAN | |
| Appellant | No. 373 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020
In the Court of Common Pleas of Bradford County
Criminal Division at No.: CP-08-CR-0000253-2019

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MANLEY CHARLES CHAPMAN | |
| Appellant | No. 836 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 13, 2020

In the Court of Common Pleas of Bradford County
Criminal Division at No.: CP-08-CR-0000671-2019

BEFORE: OLSON, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.: **FILED APRIL 09, 2021**

Appellant Manley Charles Chapman appeals from the January 13, 2020 judgments of sentence entered in the Court of Common Pleas of Bradford County ("trial court"), following his jury convictions for criminal use of communications facility, two counts of delivery of a controlled substance (methamphetamine and alprazolam), possession with intent to deliver ("PWID") (methamphetamine) and possession of contraband (methamphetamine ) by an inmate.[1] Upon review, we affirm.

The facts and procedural history of this case are undisputed. On June 4, 2019, following a February 1, 2019 narcotics investigation, Appellant was charged with, *inter alia*, criminal use of communications facility, and two counts of delivery of a controlled substance (methamphetamine and alprazolam) at docket number 564-2019 ("First Case"). The affidavit of probable cause accompanying the complaint alleged:

> 1.     On February 1, 2019, your affiant, along with officers from the Bradford County Drug Task Force (BCDTF) met with Confidential Informant (CI) #BN8-009-19 for the purpose of purchasing .7 of a gram of crystal meth and one Klonopin tablet from a white male, identified by the CI and BCDTF members as [Appellant].     While in BCDTF members' and your affiant's

---

[1] 18 Pa.C.S.A. §7512(a) and 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 5123(a.2), respectively.

presence, the CI made numerous contacts with [Appellant] by voice calling and texting on Facebook Messenger. While speaking, the CI then made arrangements to purchase the controlled substance for $50.00. While making arrangements, [Appellant] stated that the CI needed to come to meet him at the "Twin Rivers Terrace" Apartment Complex, located on Spruce Street, Athens, PA 18810, in order to make the deal. [Appellant] further requested that the CI purchase small baggies to store drugs from a local tobacco shop to give to Chapman as a part of the exchange. Prior to leaving, the CI was searched without any contraband located.

2. At approximately 3:12 PM after purchasing the baggies requested by [Appellant], your affiant arrived at [the] apartment complex while driving the [CI]. Upon pulling into the first parking lot between the 100 and 200 buildings, the CI was eventually contacted by Chapman and asked to walk around the north side of the 200 building and was given $50.00 in pre-recorded OAG buy money and the requested, purchased small baggies prior to leaving the vehicle.

3. Upon walking, officers observed the CI meeting with a white male wearing a black hoodie. After seeing them exchange things and smoking cigarettes briefly before the CI walked around the rear of the 200 building to the south side of the building and back to your affiant's vehicle. Upon entering the vehicle, [t]he CI immediately handed your affiant a folded $5.00 bill containing a bag with suspected crystal meth and a Klonopin tablet that the CI stated was exchanged with [Appellant], the male in the black hoodie, for the $50.00 in OAG buy money. The CI stated that the $5.00 bill was given by [Appellant] for the baggies that were given to him.

4. The purchased meth was subsequently found to weigh approximately .7 grams and field-tested positive for the presence of methamphetamine by Officer Serfos.

Affidavit of Probable Cause, 6/4/19 (sic). On February 25, 2019, in connection with a traffic stop, Appellant was charged with, among other things, PWID at docket number 253-2019 ("Second Case"). The affidavit accompanying the complaint alleged:

On February 25th 2019, I, [Officer] Dekar a sworn member of the Athens Borough police department, was on patrol. At approximately 03:13 hrs, I observed a white pick-up truck leave the 300-500 block of Twin Rivers apartment. I observed the vehicle pull to the side of the road on Longway street without signaling. I observed the struck [sic] stop on the roadway for an unknown reason. I further observed the male driver, later identified as, Kevin C. Shappee, waive his arm at me out of his driver's side window. I activated my emergency overhead lights at this time to initiate a traffic stop.

Upon making contact with Shappee, I detected an odor of marijuana emitting from the vehicle. I requested Shappee's driver [sic] license, which he provided. I then went back to my vehicle. I requested back-up at this time. [Officer] Zebrowski and [Officer] Watkins, both sworn members of the Sayre Borough Police department arrived on the scene at this time.

We approached the vehicle at this time. I asked Shappee where the marijuana was? Shappee ultimately advised me that it was in the glove box. I observed Shappee's eyes to be glassy and red in appearance. Due to the weather I advised Shappee that I was going to detain him and take him to my office to perform field sobriety tests. Shappee agreed. Shappee was then patted down. Shappee was then placed in my patrol vehicle.

Once in the patrol vehicle Shappee asked if I wanted to get a guy that has a lot of "ice" on him? Shappee then stated that the guy, later identified as [Appellant], had "a bunch of ice" on him. Later described as two sandwich baggies about half full of methamphetamine. . . . .

Shaped advised me that he gave [Appellant] and Lucy a ride home to Twin Rivers. Shappee advised me that on the way from Walmart to the apartment they smoked weed in the truck. Once they arrived at twin rivers they walked into the third door from the right, Apt. Shappee stated that [Appellant] was going to pay him gas money for the ride. Once he was inside he was offered "ice" and he declined. Shappee advised me that "ice" was methamphetamine and that he had seen it in the past before. Shappee advised me that he took $3.00 from him instead. Shappee stated that he would estimate that there was about two sandwich baggies half full of "ice" that he observed while inside Lucy's bedroom. Shappee stated that [Appellant] was grabbing

and or touching his right rear small of his back with his right hand frequently. Shappee believed that he had a firearm on him. Shappee witnessed a large "black tactical knife" in [Appellant's] hand while in the apartment. Shappee stated [Appellant] was looking under items while in the house and acting paranoid.

Shappee's girlfriend, Amber Herman, confirmed [Appellant] and Jacqueline Lucy were in fact the two individuals that Shappee gave a ride to Twin Rivers apartment complex. Herman also stated that [Appellant] has messaged her within the last two weeks trying to sell her methamphetamine. Herman has known [Appellant] for approximately ten years. . . . .

A search warrant was executed on the above apartment by the members of the Bradford Regional Special Operations Team. Once the residence was secure and the occupants were safe Athens Borough police officers started the search of the residence. Found in the residence was methamphetamine, packaging equipment, scales, a log book of drug sales/transactions, marijuana, a water bong, a small plastic container with unknown white substance inside, metal knuckles, a homemade taser, numerous modified fake firearms, numerous knives, multiple glass pipe used for inhaling narcotics, and counterfeit U.S. currency totaling $9,900.00.

The tenant of the apartment filled out a written statement knowing that [Appellant] had methamphetamine inside her residence. She also knew that [Appellant] was attempting to conceal his narcotics from law enforcement as all of the occupants were called down from the upstairs of the apartment.

Affidavit of Probable Cause, 2/25/19 (sic). On July 23, 2019, while Appellant was in jail at the Bradford County Correctional Facility, he was charged with possession of contraband (methamphetamine) by an inmate at docket number 671-2019 ("Third Case"). The three cases eventually were joined for jury trial. The trial court summarized the evidence adduced at trial as follows.

Attorney General Bureau of Narcotics Investigation Drug Control Agent Urbanski testified that prior to February 22, 2019, a confidential informant (CI) made contact with Appellant via Facebook messenger, text and voice calls in his presence. Arrangements were made to meet. Appellant also requested CI to obtain small baggies. CI was searched and no contraband was found. Agent and CI drove to the meeting location, an apartment complex. CI engaged in more text messages and voice calls with, who she said was Appellant. Agent then observed CI walk towards building and meet with a white male in a black hoodie fitting the description of Appellant. CI and male walked around building. A short time later CI returned and handed Agent prescription medication tablet and a $5.00 bill with a small amount of methamphetamine in it. CI told agent she met with Appellant, gave him $50.00 which was pre-recorded by Agent, in exchange for the tablet and methamphetamine as well as $5.00 for providing the plastic bags for him. A field test of the methamphetamine was positive. It was photographed. The weight was approximately 1 gram. The written messages on CI's telephone were photographed. The cash provided to CI was photographed.

On February 25, 2020 at 3:00 a.m., Athens Borough Police Officer Dekar had an interaction with a Kevin Shappee. Mr. Shappee advised the officer that he had observed a large quantity of Methamphetamine at an apartment where Appellant was staying. A search warrant was obtained and officers knocked on the door to the apartment and called the individuals who live there to come out. Appellant was the last one to exit which was 10 minutes after officer's knocked on the door. The apartment was searched and contraband was found such as scales, scale weights, calibration weights, packaging, paraphernalia for use, needles, methamphetamine, marijuana, numerous packaging materials, [and] containers. Also found was an improvised taser, brass knuckles, numerous knives, a machete and a bb revolver. The sandwich bags of methamphetamine described by Mr. Shappee were not found. Appellant was also searched but nothing found on his person. Thereafter, a second search took place at the police station holding cell, consisting of a rectal search. Appellant's rectum was red and irritated. Officer believed that Appellant concealed the sandwich bags of drugs within his rectum. Appellant was transported to the Bradford County Facility. On the way to the jail, Appellant asked if there was anything he could do for the

charges, that he is not the "largest dealer in the valley." Appellant also asked Officer Dekar if he could get his wallet for him which was located behind the headboard of bed. The wallet was then found by another officer and contained $700.00+.

Jeremy Earle was an inmate in Bradford County Correctional Facility in late February or early March, 2019 when he ingested methamphetamine. Earle was disciplined for the use of methamphetamine – "in the hole" for nearly 3 weeks. He heard Appellant say that the methamphetamine was "packed in him before he had come down the steps, prior to the jail." "[I]t was placed in his butt" and that "it was a little over an ounce." Several inmates at the jail had tested positive for methamphetamine, including Mr. Earle and Appellant.

Bradford County District Attorney's Office Detective Wisel assisted in organizing the physical evidence before trial. While looking at the evidence, he discovered that the serial numbers on the cash provided to CI, which was depicted on a picture, Commonwealth Exhibit 2, who gave it to Appellant in exchange for illegal substances matched the serial numbers on the cash found in Appellant's wallet.

Trial Court Opinion, 6/9/20, at 1-4. On January 13, 2020, the trial court sentenced Appellant to an aggregate term of 126 to 276 months' imprisonment. In the First Case, the court sentenced Appellant to 27 to 60 months' imprisonment for delivery of a controlled substance (methamphetamine), 18 to 36 months in prison for delivery of a controlled substance (Alprazolam), and 18 to 36 months' imprisonment for criminal use of communication facility, for a total sentence of 63 to 132 months. In the Second Case, the court sentenced Appellant to 33 to 72 months' imprisonment for PWID. In the Third Case, the court sentenced him to 30 to 72 months' incarceration for possession of a controlled substance (methamphetamine) by an inmate.

Appellant filed post-sentence motions in each of the three cases, arguing, *inter alia*, that his convictions were against the weight of the evidence and that his sentence was too harsh. The trial court denied the motions. Appellant timely filed separate notices of appeal in each case. We *sua sponte* consolidated the appeals. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant presents three issues for our review.[2] First, with respect to the First Case, Appellant claims that the trial court abused its discretion in denying his motion for a mistrial "after the Commonwealth introduced evidence it had in its possession prior to trial that was not disclosed to [him] and then introduced at trial." Appellant's Brief, First Case, at 7. Second, he challenges the weight of the evidence supporting his convictions for PWID, two counts of delivery of a controlled substance, criminal use of a communication facility, and possession of contraband by an inmate.[3] Third, Appellant challenges the discretionary aspects of his

_____

[2] To the extent Appellant seeks to suppress evidence resulting from the search warrant that was obtained based on Mr. Shappee's statement in the Second Case, he is not entitled to any relief. Appellant failed to file a suppression motion below. **See** Pa.R.Crim.P. 581(B) ("If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived."); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

[3] Even though couched as a sufficiency of the evidence claim, we construe it, for reasons provided below, as challenging the trial court's weight and credibility determinations.

- 8 -

sentence. In specific, he argues that the respective sentences imposed in the three cases were excessive and harsh. We address the claims in turn.

Appellant first argues that the trial court abused its discretion in denying his motion for mistrial where the Commonwealth allegedly failed to disclose the matching serial numbers of the pre-recorded buy money provided to the CI and the money discovered in Appellant's wallet.

Our standard of review for the denial of a motion for a mistrial is limited to assessing whether the trial court abused its discretion. *Commonwealth v. Scott*, 146 A.3d 775, 778 (Pa. Super. 2016), *appeal denied*, 166 A.3d 1232 (Pa. 2017). Moreover, decisions involving discovery matters are also within the sound discretion of the trial court. *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017), *appeal denied*, 189 A.3d 986 (Pa. 2018). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Antidormi*, 84 A.3d 736, 749–50 (Pa. Super. 2014) (citations omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014).

The purpose of the discovery rules is to prevent a trial by ambush that violates a defendant's right to due process. *Commonwealth v. Ulen*, 650 A.2d 416, 419 (Pa. 1994) (discussing the prior version of Pa.R.Crim.P. 573). Pennsylvania Rule of Criminal Procedure 573 provides, in relevant, part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

. . . .

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Pa.R.Crim.P. 573(B)(1)(f). As we have explained:

Rule 573 does not abridge or limit the Commonwealth's duty to provide discovery pursuant to ***Brady v. Maryland***, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. "In ***Brady***, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." ***Commonwealth v. Burke***, 566 Pa. 402, 781 A.2d 1136, 1141 (2001) (quotation marks omitted). "There are three components of a true ***Brady*** violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." ***Strickler v. Greene***, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

However, the rule imposes greater obligations upon prosecutors than the ***Brady*** requirements. For instance, (B)(1)(b) requires production of a defendant's written confession. Nevertheless, our cases frequently analyze whether a particular discovery sanction was justified by analyzing whether the evidence was required to be disclosed pursuant to ***Brady***. ***See e.g. Commonwealth v. Robinson***, 122 A.3d 367 (Pa. Super. 2015) (reversing order precluding Commonwealth from introducing

- 10 -

evidence, analyzing ***Brady***). That one would draw upon ***Brady*** principles in determining materiality is unsurprising since the rule limits disclosure to "material" items, Pa.R.Crim.P. 573(B), and "material for ***Brady*** purposes" has a particular meaning. ***See e.g. Commonwealth v. Willis***, 616 Pa. 48, 46 A.3d 648 (2012) (noting that admissibility at trial is not a prerequisite to disclosure under ***Brady***).

***Commonwealth v. Maldonodo***, 173 A.3d 769, 774 (Pa. Super. 2017), ***appeal denied***, 182 A.3d 991 (Pa. 2018). As noted, the duties to disclose information imposed by ***Brady*** and Rule 573 are overlapping, but not identical. We often have analyzed claims involving Rule 573 using principles from ***Brady***. For example, in the context of ***Brady***, it is well settled that "no ***Brady*** violation occurs where the parties had equal access to the information or if the defendant **knew or could have uncovered such evidence with reasonable diligence**." ***Commonwealth v. Morris***, 822 A.2d 684, 696 (Pa. 2003) (citation omitted) (emphasis added). In the context of Rule 573, this Court also has noted that "[w]here evidence is equally accessible to both the prosecution and the defense, the latter cannot employ [the discovery rules] against the Commonwealth." ***See Santos***, 176 A.3d at 883 (citations omitted). Furthermore, Rule 573 does not require the Commonwealth to divulge its trial tactics or how it may use certain information, and defense counsel has a duty to investigate available information for possible evidence. ***See Maldonodo***, 173 A.3d at 783-84; ***Commonwealth v. Monahan***, 549 A.2d 231, 235 (Pa. Super. 1988). Similarly, Rule 573 does not entitle a defendant to information in a form

most helpful or convenient to the defendants. *See Maldonodo*, 173 A.3d at 783; *Commonwealth v. Robinson*, 122 A.3d 367, 373-74 (Pa. Super. 2015), *appeal denied*, 130 A.3d 1289 (Pa. 2015). Nonetheless, courts have cautioned that "[b]ecause we are dealing with an inevitably imprecise standard [regarding materiality], and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Maldonodo*, 173 A.3d at 781-82 (citation omitted).

If the Commonwealth has violated its discovery obligations, the trial court is authorized to impose sanctions:

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

Instantly, based on our review of the record, we cannot conclude that the trial court abused its discretion in denying Appellant's motion for a mistrial. As the trial court aptly reasoned:

> Here, the Commonwealth did not violate Rule 573. The matching of the serial numbers on the cash provided to the CI to that in Appellant's wallet was only discovered by the Commonwealth during the trial. It was Appellant who, on the night of his arrest, pointed the police officers as to where his wallet was located. The police officers were then able to seize

- 12 -

the wallet and cash inside the wallet. Thus, there was no failure to disclose evidence. The picture of the cash used by the CI to purchase illegal substances from Appellant was disclosed as set forth in the affidavit of probable cause. The cash and wallet were listed on the evidence sheet in one of Appellant's other cases. All evidence was available to Appellant.

Even if the Commonwealth had violated its duty to disclose evidence, Appellant's claim of surprise does not merit relief. Appellant did not articulate any prejudice other than surprise. Appellant did not establish or argue that his trial strategy was changed or any other form of prejudice. Appellant did ask for a continuance in the alternative to a mistrial, but did not set forth how a continuance would assist him in his defense. This is most likely because there was nothing that could be done. Finally, the fact that Appellant was, or should have been, aware of the cash in his wallet matching the cash used by the CI refutes his claim of surprise.

In light of the above, there was no violation of their duty to disclose by the Commonwealth. Even if there had been a violation, there is no error in denying the motion for mistrial[.]

Trial Court Opinion, 6/9/20, at 9. Accordingly, Appellant is not entitled to any relief. Appellant was made aware of the existence of the pre-recorded cash that was provided to the CI. Indeed, Appellant voluntarily directed the police to the location of his wallet wherein the cash at issue was discovered.

We now turn to Appellant's second issue, which implicates the weight of the evidence. As we have explained:

On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that

- 13 -

verdict was so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Habay***, 934 A.2d 732, 736-37 (Pa. Super. 2007) (internal citations omitted), ***appeal denied***, 954 A.2d 575 (Pa. 2008). "[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" ***Commonwealth v. Sanders***, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting ***Commonwealth v. Diggs***, 949 A.2d 873, 880 (Pa. 2008)).

In the First Case, Appellant challenges the weight assigned to the CI's and the Agent Urbanski's testimony. Appellant's Brief, First Case, at 15-16. Additionally, he casts doubt on their credibility. ***Id.*** In the Second Case, Appellant essentially attacks Mr. Shappee's testimony and claims it is "incredible" and "unreliable." Appellant's Brief, Second Case, at 7. Alternatively, Appellant proffers his version of the facts where Lucy, the named tenant of the apartment, is a drug dealer. ***Id.*** at 7-8. In the Third Case, Appellant claims that Mr. Earle's testimony should have been "discounted" because "he is an incredible witness." Appellant's Brief, Third Case, at 9. In all three cases, Appellant essentially attacks the jury's weight and credibility determinations, and invites us to accept his version of events. We decline the invitation. It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court— because it is the province of the factfinder to assess the credibility of the witnesses and evidence. ***See Commonwealth v. DeJesus***, 860 A.2d 102,

107 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that for the finder of fact."). Appellant's claim lacks merit.

Lastly, we address Appellant's challenge to the discretionary aspects of his sentence.[4] It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be

---

[4] When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 64 A.3d 630 (Pa. 2013).

considered as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)). Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001), *appeal denied*, 796 A.2d 979 (Pa. 2002).

Here, Appellant has satisfied the first three requirements of the four-part *Moury* test. Appellant filed a timely appeals to this Court, preserved the issue on appeal through his post-sentence motions, and included a

Pa.R.A.P. 2119(f) statement in his briefs.[5] We, therefore, must determine only if Appellant's sentencing issues raise a substantial question.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 895 (Pa. 2009). "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013), *affirmed*, 125 A.3d 394 (Pa. 2015).

It is settled that this Court does not accept bald assertions of sentencing errors. *See Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the

---

[5] Rule 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f).

facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Commonwealth v. Ahmad***, 961 A.2d 884, 886-87 (Pa. Super. 2008) (quoting ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005)). A Rule 2119(f) statement is inadequate when it "contains incantations of statutory provisions and pronouncements of conclusions of law[.]" ***Commonwealth v. Bullock***, 868 A.2d 516, 528 (Pa. Super. 2005) (citation omitted).

As we discussed earlier, Appellant received an aggregate sentence of 126 to 276 months' imprisonment. In the First Case, the court sentenced Appellant to 27 to 60 months' imprisonment for delivery of a controlled substance (methamphetamine), 18 to 36 months in prison for delivery of a controlled substance (Alprazolam), and 18 to 36 months' imprisonment for criminal use of communication facility, for a total sentence of 63 to 132 months. In the Second Case, the court sentenced Appellant to 33 to 72 months' imprisonment for PWID. In the Third Case, the court sentenced him to 30 to 72 months' incarceration for possession of a controlled substance (methamphetamine) by an inmate. Appellant concedes that his sentences were in the standard range. ***See Moury***, 992 A.2d at 171 ("[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.").

Here, Appellant asserts in his Rule 2119(f) statements only that his sentence at each count and in the aggregate is excessive because it is too

harsh. As the Commonwealth correctly notes, Appellant "does not offer any explanation how the sentence is inconsistent with any provision of the sentencing code or contrary to any fundamental norm of the sentencing process." Commonwealth's Brief, First Case, at 13; Second Case, at 11. It is well-settled that a bald claim of excessiveness, even due to the consecutive nature of a sentence,[6] does not ordinarily raise a substantial question. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014). Appellant therefore fails to raise a substantial question. He is not entitled to any relief.

In sum, the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. His weight of the evidence and discretionary aspects of sentencing claims lack merit.

Judgments of sentence affirmed.

---

[6] *See Commonwealth v. Radecki*, 180 A.3d 441, 468-69 (Pa. Super. 2018) (explaining that "excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review"); *see also Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (stating, "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[.]"), *appeal denied*, 126 A.3d 1282 (Pa. 2015); *see also Commonwealth v. Ahmad*, 961 A.2d 884, 887 n.7 (Pa. Super. 2008); *Commonwealth v. Pass*, 914 A.2d 442, 446-47 (Pa. Super. 2006).

J-S04023-21
J-S04024-21
J-S04025-21

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/09/2021